## Miles, Appellant, *v.* Pennsylvania Coal Company.

*Mines and mining—Surface support—Preliminary injunction.*

Where a lease expressly allows the lessee of a coal mine to rob the pillars without liability for subsidence of the surface it is not a case for preliminary injunction, even though the privilege is only in the lease of part of the land, and the complainants are co-tenants of the lessor.

Argued Feb. 20, 1906.   Appeal, No. 14,  Jan.  T., 1906, by plaintiff, from decree of C. P. Lackawanna Co., Jan. T., 1906, No. 2, refusing preliminary injunction in  case of William Miles et al. v. The Pennsylvania Coal Company.   Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Bill in equity for an injunction.

KELLY, J., filed the following opinion :

In the year 1880, William Miles and others, being the owners of a tract of land containing upwards of 128 acres in Old Forge township, in this county, made a lease of the coal underlying the surface to the Pennsylvania Coal Company, the defendant, under certain terms and conditions, to some of which we shall hereafter refer.   In 1885 the interest of Agnes A. Smull, one of the lessors, which amounted to an undivided 19–110 of the whole, was acquired by the defendant by a deed from her.   By this deed the defendant acquired title to an undivided 19–110 interest in both the surface and the coal.   In 1899 the Pennsylvania Coal Company, defendant, conveyed to William Miles, one of the lessors in the coal lease, its 19–110 interest in the surface of the 128 acres, reserving the coal with the right to remove it without liability for injury to the surface by such clear, sweeping and comprehensive language that no doubt can be entertained but that under the reservation clause the coal company had the right to mine out all of the coal, including pillars, without regard to the effect upon the surface.   William Miles has since died, and his heirs, William Miles, Caroline A. Miles, Caroline E. James, Warren A. James and Ada Carter, are now the owners of an undivided 61–110 interest in the coal, and 80–110 interest in the surface, subject, of course, to the interest of the lessee ; the other plaintiffs, Lorenzo Burdette Smull, Thomas Smull and Rebecca Houston, owning 30–110 interest in the coal and surface, while the defendant owns 19–110 interest in the coal only.

The evidence shows that the defendant, after having practically mined out all of the coal in one of the veins, called the Slope Vein, which could be mined without endangering the surface, is now proceeding to remove the coal formerly left as

pillars for surface support, comprising about one-third of all
the coal; and that it is the intention to mine out all of the
coal in the property without any provision for surface support
and without regard to the effect upon the surface; and that
this removal or "robbing" of pillars will undoubtedly damage
and injure the surface and cause it to subside to a greater or
a lesser extent, which cannot, with any degree of certainty, be
foretold.    This the defendant company contends it has the
right to do by virtue of the provisions of the lease first re-
ferred to, while it is contended on the part of the plaintiffs
that it acquired no such right under the terms of the lease, and
that it should be restrained from doing so by preliminary and
permanent injunction.

It seems to us that the heirs of William Miles can have no
standing to restrain the defendant from mining all of the coal
in the property, in view of the comprehensive and effective
terms used in the reservation contained in the deed from the
defendant to him, conveying 19–110 of the surface.    In ac-
cepting that deed he agreed that the coal company might mine
"all the several veins of coal in, under and upon, the land de-
scribed," the surface of which was conveyed "as fully and en-
tirely as if the said party of the first part, its successors and
assigns, remained the owner in fee simple of said sur-
face or right of soil "; he agreed to take the surface (19–110
undivided interest in it) " with the full knowledge that the coal
thereunder has been or may be entirely mined out and re-
moved, and that from such mining out and removal the surface
and any improvements thereon may be injured or entirely
destroyed," and that " there is no covenant express or other-
wise " that the surface would be sustained by either vertical
or lateral support.    Plaintiffs contend that this provision can
only be applied to the property conveyed, viz.: 19–110 of the
surface.    Granting that this contention is correct, for the pur-
pose of the argument at least, it must be borne in mind that
the 19–110 is an undivided interest, and that to hold that the
defendant must support the surface as far as the 19–110 is con-
cerned is to hold that it must support it all, and thus abso-
lutely take away from it the benefit of the reservation clause
in its deed to William Miles.    This construction would be
clearly inequitable and we cannot adopt it in an application for

a preliminary injunction. This being so it would not be proper to grant the writ in favor of the other plaintiffs who are the owners of 30–110 of the surface only, because of the well known principle that when the granting of an injunction will do more harm to the defendant than good to the plaintiff, it should be refused and the plaintiff left to his legal remedy. For these reasons we think that the preliminary injunction, which should never issue except in a clear case, should be refused.

But regardless of the complications of the question, by reason of the different interests in the surface and the coal, we think the case is with the defendant upon the main question by reason of the clause in the lease which waives the right of surface support. The lease is for " all of the merchantable coal " in the property that can be worked, " together with the right to mine and remove said coal in said veins until all the merchantable coal has been mined and removed from said veins on said hereby leased premises." It provides for the method of mining, the royalty and method of payment, etc., and contains this clause: " And it is hereby further agreed that the said lessee shall not be liable for any falling in of any part or parts or all of the surface of the said hereby demised premises in consequence of the mining and removing of all of the said coal, and the said lessors shall indemnify the lessee against any liability for any falling in of any surface of any lots in said demised premises, the surface of which may have been sold by said lessors."

The law upon the respective rights of the owners of the surface and the owners of the coal, is clearly stated in Barringer and Adams on Mines and Mining, 675 et seq.: " Where there has been a horizontal division of the land, the owner of each subjacent estate owes to the owner of the superincumbent estate the support of his land in its natural condition, and the owner of the superincumbent estate has conversely a right to this support. This is an absolute proprietary right, necessarily arising out of the ownership of the surface, and not an easement depending upon a grant. The mine owner in taking out his minerals must leave sufficient support for the superincumbent land. This he may do by leaving ribs or pillars, or by constructing artificial supports. If he fails to do this, and the

land sinks he is liable for the damage that occurs to the surface owner by reason thereof, and he may be enjoined from the further removal of minerals. Whether the mine owner has worked his mine skillfully or negligently does not affect the existence of the right to surface support. . . ." "The owner of the minerals has a right to so much only as he can take out without injury to the surface. . . ." "Though the right of surface support is absolute, yet the subjacent owner may be relieved of the corresponding obligation by a release from the surface owner, or by the terms of the instrument creating his estate. But upon him who thus attempts to control the rule of law, lies the burden of proof. To destroy or injure the surface, there must exist some statutory or contract authority. The intention to part with the right of surface support must appear by plain and explicit language in the grant of the minerals, or by an express exception from a reservation of them. It may not be taken away by mere implication from language not necessarily importing such a result." These general principles are fully supported by the cases in Pennsylvania: Lowry v. Hay, 2 Walk. 239; Gumbert v. Kilgore, 6 Cent. Repr. 406; Robertson v. Coal Co., 172 Pa. 566; Jones v. Wagner, 66 Pa. 429; Scranton v. Phillips, 94 Pa. 15; Coal Co. v. Hopkins, 198 Pa. 343; Williams v. Hay, 120 Pa. 485; and McDade v. Spencer, 6 Lacka. Leg. News, 84. The last case was one decided in this court, the opinion being by EDWARDS, P. J., who reviewed the authorities at length, and laid down the following propositions of law: " 1. Where there has been a separation of the minerals from the surface, the owner of the mineral estate, in the absence of an agreement to the contrary, owes a servitude to the superincumbent estate of sufficient support. 2. There is no custom of mining which permits the owner of a mineral estate to remove the supports and allow the surface to sink. 3. The implied right of support to the surface may, however, be excepted from the grant by apt words in the deed, and where such exception has been made the grantor or those who claim under him may mine all the coal, even though by so doing the surface may fall in." And Mr. Justice PAXSON, in Williams v. Hay, 120 Pa. 485, tersely states the proposition as follows: "It is settled law in this state that when one person owns the surface and another person owns the coal or other minerals

lying underneath, the under or mineral estate owes a servitude of sufficient support to the upper or superincumbent estate. This principle has no application where the same person is the owner of both estates, nor does it apply where by the contract between the parties they have covenanted for a different rule. Like any other right, the owner of the surface may part with the right to support by his deed or covenant."

Applying these principles to this case it seems to us that the clause in the lease which we have quoted in which it is specifically agreed that the lessee shall not be liable for the falling in of any or all of the surface on account of mining and removing all of the coal, is such clear waiver of the right of surface support that it cannot be seriously questioned. This clause not only waives all right to surface support as far as the lessors are concerned, but it goes farther and stipulates that the lessors shall indemnify the lessee against liability for any falling in of the surface on any lots which may have been already sold. This language plainly shows that the intention was that all of the coal could be mined without liability for damage even though as a result all the surface might fall in. We cannot see how any language could more aptly express the agreement of the parties that the right to surface support was waived, and that all the coal was conveyed with the right to mine it with absolute disregard to the effect upon the surface.

We have examined the lease from beginning to end with a view of ascertaining whether there is anything to be found which would tend to modify the effect of the stipulation on the subject of damages to the surface, but have been unable to find any language which would have such a tendency. Counsel for the plaintiffs contend the clause which provides that " if said lessors may wish at any time to have more pillars left in the mines than it appears to be the intention of the said lessee to leave, or that said lessee may have left in similar workings in said hereby demised premises the said lessors may, by written notice to said lessee, designate where and in what manner such pillars are to be left," implies that pillars were to be left to support the surface. But we do not think such is the reasonable inference to be drawn. The clause is more or less ambiguous, yet it seems to us to mean that during the process of mining the lessors shall have the right to see to it that the mining is

conducted in a skillful manner so as not to destroy or injure the mine while the coal is being taken out. It is a matter of common knowledge that great quantities of coal in a mine might be entirely lost as the result of unskillful mining, and it is fair to suppose that when the lease was entered into it was the desire of the lessors that all the coal which the property could possibly yield might be taken out and paid for, and as the lessee might have abandoned the property or have become insolvent, or in some way the property might revert to the lessors before the coal was all mined, it was most desirable and proper that the lessors should have some say as to how the mining operations should be carried out. We do not think the principles of construction would warrant us in giving this last clause quoted the effect contended for by the plaintiffs. No notice was given in compliance with this clause, so no injunction can issue by virtue of violation of its provisions, nor is one asked for on that ground. The rule is, therefore, discharged, and the preliminary injunction refused.

*Error assigned* was the decree of the court.

*H. M. Hannah* and *S. B. Price*, for appellants.

*Everett Warren*, with him *E. N. Willard*, *Henry A. Knapp* and *Charles P. O'Malley*, for appellee.

PER CURIAM, March 19, 1906 :

We have not been convinced that this is a case requiring a preliminary injunction. Following the usual rule, therefore, we express no opinion on the merits.

Appeal dismissed.