## Burrows v. Pittsburgh Coal Company.

*Deeds—Reservations—Coal mining—Oil wells—Surface support—Damage to improvements—Damnum absque injuria.*

1. Where the lessor of oil and gas rights in a tract of land holds title to the land subject to an express reservation to others of the right to mine and carry away all the coal thereunder, without liability "for injury done to the surface, springs or buildings by the removal of said coal," the rights of the lessee can rise no higher than those of the lessor.

2. The lessee under such a lease cannot recover against the coal mining company for damages to casing and tubing of his oil well, caused by a subsidence of the surface due to the coal mining thereunder; the damages in such case are *damnum absque injuria.*

3. It is immaterial that the reservation of the coal and the right to mine the same were expressly subjected to the right to the oil and its removal, since, in the action for injuries to the improvements on the surface, no damage to the underlying oil was averred.

Statutory demurrer to statement of claim. C. P. Washington Co., Nov. T., 1920, No. 98.

*Harry A. Jones,* for plaintiff; *Donnan & Miller,* for defendant.

BROWNSON, P. J., Jan. 30, 1922.—By a deed dated July 1, 1890, and recorded on Nov. 7, 1890, William H. Kelso *et ux. et al.* conveyed to W. P. Rend in fee simple "all the bituminous coal in the veins or seams within and underlying" a certain tract of land, "together with the right to enter into, mine and carry away all of said coal, without liability for injury done to the surface, springs or buildings by the removal of said coal, . . . excepting and reserving from this conveyance the right and privilege to said first parties and their heirs and assigns to drill and excavate for oil, gas and other volatile substance, and operate for and take away the same without let or hindrance and without liability for damages by reason thereof. . . ." On Nov. 14, 1891, William H. Kelso granted to W. H. Staley and N. D. Jones a lease for oil and gas purposes of the tract of land aforesaid. The defendant is the successor in title of W. P. Rend, and the plaintiff is the successor in title of Staley and Jones.

Under the lease owned by the plaintiff, a well was drilled through the Pittsburgh seam of coal, developing oil in paying quantities, and on or about April 15, 1920, it was a producing oil well. The cause of action set out in the statement of claim is that the defendant, "in disregard of plaintiff's rights, so negligently mined and removed said coal that on or about April 15, 1920, the said strata of coal and overlying surface were caused or allowed to subside, thereby collapsing the tubing and casing of said oil well, and destroying the production thereof." The defendant by statutory demurrer has raised the question whether the provision in the deed of July 1, 1890 (which deed is made a part of the statement of claim), whereby the owner of the coal thereby granted is exempted from liability "for injury done to the surface . . . by the removal of (all of) said coal," is a bar to this action.

As the deed conveying the coal antedates and was upon record at the time of the creation of the leasehold estate owned by the plaintiff, and that leasehold was carved out of the title remaining in the grantor after the making of this deed, the plaintiff necessarily holds his leasehold subject to all the provisions of the coal deed. In other words, the rights of the plaintiff are precisely the same as would be those of the grantor, William H. Kelso, if the latter had himself drilled and were the owner of the oil well.

The injury to the well, in and by the collapsing of the tubing and casing, is averred to have resulted from a subsidence of the "strata of coal and overlying surface," caused by the mining of the coal. No act of maliciousness or wanton recklessness in such mining is averred. The statement contains the word "negligently," but no act of negligence is specified, other than the removal of surface support by the mining done. At the argument we stated that, as we interpret the statement of claim, the only negligence averred is a breach of the duty (claimed to have been owing from the defendant to the plaintiff) to maintain or provide sufficient support for the superincumbent strata through which the plaintiff's tubing and casing passed; and this interpretation was assented to by counsel of defendant. Our question, then, is whether the mining and removal of coal, without substituting in its place any other sufficient support of the overlying strata, is an actionable wrong to this plaintiff, in the face of the provision contained in the deed that the owner of the coal shall not be liable "for injury done to the surface."

The word "surface," as used in such a provision in a deed, has uniformly been understood and treated in Pennsylvania as referring to the superincumbent strata, and as embracing everything lying above the coal conveyed. The books are full of cases in which it has been given this meaning: Robertson v. Coal Co., 172 Pa. 566; Jones v. Wagner, 66 Pa. 429; Coleman v. Chadwick, 80 Pa. 81; Horner v. Watson, 79 Pa. 242; Penman v. Jones, 256 Pa. 416; Stilley v. Pittsburgh-Buffalo Co., 234 Pa. 492. See, also, Yandes v. Wright, 66 Ind. 319, 32 Amer. Reps. 109. Nor does the addition in this deed of the words "springs or buildings" derogate, in our opinion, from this meaning of the word "surface." The latter word was used in the sense of overlying soil, and the former words were added to express clearly the intention that the freedom from liability shall extend to springs and buildings which might be claimed to be, in one sense of the term, not a part of the soil.

A clause unqualifiedly exempting the coal owner from liability for injury done to the surface by the mining and removal of all of the coal has uniformly been held to amount to a waiver of surface support, relieving the owner of the mine from the duty, which otherwise he would be under, of supporting the overlying strata: Madden v. Coal Co., 212 Pa. 63; Miles v. Coal Co., 214 Pa. 544, 217 Pa. 449; Kellert v. Coal and Iron Co., 226 Pa. 27; Graff Furnace Co. v. Coal Co., 244 Pa. 592.

It is claimed by the plaintiff that a qualification of this release is to be found in the subsequent clause of the deed, whereby the grantors excepted and reserved the right to drill through the coal for oil and gas, and operate for and take away the same, "without let or hindrance." It is argued that a subsidence of the surface, whereby the casing and tubing of an oil well are injured, and the passage of oil by means of them, through the coal, to the top of the ground is thus interrupted, is a "let or hindrance" to operating for oil, and, hence, this reservation as to drilling and operating for oil and gas does away with the release of surface support, so far as concerns such portions of the surface as the grantors or their assigns might thereafter make use of for oil or gas operations.

At the time when this deed was made, July 1, 1890, it had not yet been decided that a conveyance of coal, without annexing any reservation of the right to drill through it, does not vest in the grantee a right to stop the surface owner from sinking an oil well through his coal. The first case in which such a decision was made was Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, decided in the lower court in October, 1891, and in the Supreme Court on Jan. 9, 1893. The apparent purpose of inserting this reservation in the deed was to prevent the conveyance from being held to have the effect of relinquishing the right to reach the oil and gas which lay below the coal, and to prevent the owner of the coal from acquiring the right to stop the surface owner from passing through the coal for this purpose, it not then having been settled by the courts that this would not be the effect of a deed not containing such a reservation. This would seem to be a legitimate consideration in placing an interpretation upon this deed. Then there are two rules of construction which should be applied: (1) That different clauses in an instrument should, if possible, be so construed that neither will interfere with the full operation of the other; and (2) that the words of a deed are to be construed most strongly against the grantor. See Algonquin Coal Co. v. Coal and Iron Co., 162 Pa. 114, 117. Applying these principles, we are of opinion that the two clauses in question can so be harmonized and construed together that neither will nullify any part of the other, the first being interpreted as relieving the coal owner from the duty of supporting any part of the surface, and the second as precluding him from undertaking to stop and prevent the surface owner from putting and maintaining in and through the coal the casing and tubing necessary for oil operations, or to prevent the constructing and maintaining around or in connection with them of any necessary protective safeguards against the effects thereon of a subsidence of the surface. We do not think the words "let or hindrance" refer to the natural results of the coal owner's exercising the rights unequivocally conferred upon him by the waiver of surface support. It is to be remembered that the grantors received for their coal a price that presumably was enhanced by this waiver, and, in consideration of this enhancement, intended to assume all risks of subsidence. And, as already pointed out, the plaintiff stands in their shoes.

It is further argued that this action is brought, not for an injury to the surface, i. e., the strata overlying the coal, but for an injury to an underlying estate, the oil. But it is not claimed that the defendant has touched that underlying oil. No direct injury to it is averred. What is averred is that the casing and tubing in or above the coal were injured in and by a subsidence of the surface, and the wrong declared on is the permitting the surface to subside for want of support. What the plaintiff was deprived of was the use, for the purpose of maintaining his casing and tubing as a transportation facility, of the overlying soil in its natural position, and this deprivation

occurred through the operation of the natural force of gravity in consequence of the fact that the defendant did not do what plaintiff's predecessors in title agreed it should be relieved from doing, viz., to substitute some other support for the surface when it removed the coal.

The whole case is grounded by the statement of claim upon the alleged breach of a duty to support the surface, and as we think that, by the effect of the conveyance above recited, such duty did not exist, the damages sued for are *damnum absque injuria.*

And now, Jan. 30, 1922, after argument and due consideration, the court determines the question of law raised by the affidavit of defence, filed in lieu of a demurrer, in favor of the defendant, and being of opinion that such determination thereof disposes of the whole of the plaintiff's claim, does order and direct the entry of judgment in favor of the defendant.

From Harry D. Hamilton, Washington, Pa.