Yuscavage *v.* Hamlin.

14

Argued November 15, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

Mitchell Jenkins, with him Rosenn, Jenkins & Greenwald, for appellants.

*James T. Shea,* with him *Shea & Shea,* for appellees.

OPINION PER CURIAM, January 6, 1958:

On this appeal we are called upon to construe a deed in order to determine whether it conveys title to the subsurface gas and oil estates.

In this action to quiet title the facts are undisputed. On April 14, 1919, Pulaski Hamlin and his wife owned and possessed two tracts of land—64 acres and 20 acres, respectively—located in Exeter Township, Luzerne County, Pa. Nineteen years previously, when Hamlin purchased these two tracts of land, an exception or reservation had been made in the conveyance of "All the coal in and under said two tracts of land, with the right to mine and remove two-thirds of the same by any subterranean process . . .". On April 14, 1919 Hamlin and his wife conveyed the land by a general warranty deed to one Sarli. The instant problem involves the construction of that deed.

That deed conveyed "All the surface or right of soil" of the two tracts of lands (described by metes and bounds). In addition the following pertinent language and clauses then appear in the deed: (1) "The two pieces or parcels of *land* above described are known as the J. Benedict Jones farm"; (2) a reference to "The *land* above described and intended to be conveyed"; (3) another reference to the conveyance of "the said *land*" between predecessors in the line of title wherein a "certain cemetery lot" was reserved; (4) another reference to a conveyance of "the said *land*" by Hamlin's immediate predecessor in title; (5) another reference to a conveyance of "the said *land*" by Hamlin to his wife; (6) an appurtenance clause—"Together with all and singular, the . . . appurtenances"; (7) a habendum clause—"AND ALSO, all the estate, right, title, interest

. . ." of Pulaski Hamlin and his wife; (8) a general warranty clause. Subsequent to this deed, by various mesne conveyances the title to the premises became vested in the appellees.

Did the conveyance from the Hamlins to Sarli transfer title to the oil and gas under the two tracts of land?

As we recently pointed out in *Brookbank v. Benedum-Trees Oil Co.*, 389 Pa. 151, 157, 131 A. 2d 103, certain rules are applicable in the construction of deeds. Among such rules are those providing: (1) that the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to *all* the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

When the Hamlins acquired ownership of these two tracts of land they received a complete ownership of all the estates in, under and above the land except that which had been specifically excepted and reserved, to wit: the coal. Applying the rules of construction to the terms and language of this deed it is evident that the Hamlins conveyed to Sarli their entire interest in the two tracts of land, including the gas and oil rights.

Judge FLANNERY very carefully analyzed the language and terms of the deed in the following manner:

"The Hamlin deed, with which we are concerned, described the subject of the conveyance as: '*All the surface or right of soil* of those two certain tracts,

pieces or parcels of land, adjoining each other, . . .'
(Underscoring [italics] supplied).

"Without more it might be argued that the grantors
conveyed the surface only, but there is more and it is
of prime significance. The next paragraph provides:
'The two pieces or parcels of land above described are
known as the J. Benedict Jones farm.'

"And the next: 'The land above described and *in-
tended to be conveyed* was formerly owned by J. Bene-
dict Jones', (underscoring [italics] supplied), etc.,
etc., after which the title is carried through its vari-
ous grants down to the Hamlins and referred to
throughout as 'the said land', i.e., the land formerly
owned by J. Benedict Jones.

"Then we come to the final clause in the grant
which provides: 'Together with all and singular, the
buildings, improvements, woods, ways, rights, liberty
or privileges, hereditaments, and appurtenances, to the
same belonging, or in any wise appertaining, and the
reversion and reversions, remainder and remainders,
rents, issues and profits thereof, and of every part and
parcel thereof: AND ALSO, all the estate, right, title, in-
terest, property, possession, claim, and demand what-
soever, both in law and equity, of the said parties of
the first part, of, in, and to the said premises, with
the appurtenances:'

"When we read that '*all the estate, right, title, in-
terest, property, possession, claim and demand what-
soever*' of the grantors is to be conveyed, the convic-
tion grows that this was meant to be a fee, or certainly
to the full extent of the grantor's title (Underscoring
[italics] supplied).

"It has been said that the habendum clause in a
deed serves to define the estate created in the physi-
cal property. '. . . The purpose of the habendum

clause in a deed is to determine what estate passes: Robey, Real Estate & Conveyancing in Pennsylvania, page 81, Section 81; and Fallon, Penn. Law of Conveyancing, page 174. The habendum may enlarge, expound, qualify or vary the estate granted in the premises of the deed: Irwin v. Hoffman et al., 319 Pa. 8, 15, 179 A. 41, and authorities there cited . . .' Ontelaunee Orchards, Inc. vs. Rothermel et ux., 139 Pa. Superior Ct. 44, at pp. 49 and 50. And while it is true that a recital not a necessary part of the deed can neither diminish nor qualify the grant if that operative part of the deed is certain and definite yet, where the terms are uncertain or contradictory, reference may be made to the recital to determine the intention of the parties. Penna. Horticultural Society vs. Craig, 240 Pa. 137. On this aspect of the matter we must also keep before us one of the cardinal principles in the construction of deeds, i.e., that no part shall be rejected if it can be given a meaning. Ivey Co. vs. Franklin Associates, Inc., supra; Hardes vs. Penn Charcoal & Chemical Co., supra.

"The habendum clause then must be evaluated as an integral and important element of the instrument and it provides: 'TO HAVE AND TO HOLD the said premises, with all and singular the appurtenances, unto the said party of the second part, his heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, his heirs and assigns forever.'

"It covers every vestige of interest which the grantor then had in the J. Benedict Jones farm.

"Under such circumstances we cannot construe this deed as limited to the surface crust, the mere superficies, such as might be required for agricultural purposes. We are satisfied that the grantors conveyed their entire right, title and interest in and to the land

as the deed in the main indicates. It must be remembered that the coal here had already been reserved and removed, and we are convinced that the term 'surface' was employed in contemplation of that severance only."

With Judge FLANNERY'S conclusion we are in complete accord.

*Shell Oil Co. v. Manley*, 124 Fed. 2d 714, *Drummond v. White Oak Fuel Co.*, 104 W. Va. 368, 56 A.L.R. 303, and *Jividen v. New Pittsburg Coal Co.*, 45 Ohio App. 294, 187 N.E. 124, relied on by appellant, are neither binding upon us nor apposite to the present situation. Both *Silver v. Bush*, 213 Pa. 195, 62 A. 832 and *Hendler v. Lehigh Valley RR. Co.*, 209 Pa. 256, 58 A. 486 support the conclusion we have reached.

Judgment affirmed.