## Lewis Manor Land Co. v. Long

*William H. Eckert* and *Eckert, Seamans & Cherin*, for plaintiff.

*Harry Bowytz* and *Louis Bowytz*, for defendants.

O'BRIEN, J., October 30, 1958.—This court, acting through Judge Montgomery, on August 1, 1958, issued a preliminary injunction enjoining defendants, their agents, servants, contractors and representatives from excavating or erecting or proceeding with the erection of any structure on lot no. 34 in plaintiff's plan of lots called Chartiers Heights No. 2, until defendants have first obtained the approval of plaintiff's architect of the plans and specifications for any such structure. Hearing on the continuance of the injunction was set for August 5, 1958, and was held accordingly.

Plaintiff laid out a tract of land belonging to it in lots and sold one of those lots, no. 34, to defendants. The deed which defendants accepted for said lot and upon which their title thereto depends, so far as mate-

rial here, contains the following language: "no building shall be erected upon said land nor shall any external alterations be made thereto until the plans and specifications for said construction or alteration shall first be submitted to the Lewis Manor Land Company's architect for approval."

Defendants submitted preliminary plans to plaintiff's architect for a dwelling and integral garage to be erected upon said lot, but have never submitted any specifications. The plans showed that two of the walls of the house were to be constructed primarily of concrete blocks exposed on the exterior surface, that there were also concrete blocks exposed to some extent on the other two walls and that the entire chimney was constructed of concrete blocks exposed to public view from the ground to the top of the chimney. Plaintiff's architect declined to approve the plans because of the proposed use of concrete blocks in exterior walls and the chimney of the house where they would be exposed to public view, on the ground that they would cheapen the neighborhood, depreciate the value of other property in the vicinity belonging to plaintiff and to other persons who had purchased lots in the plan and would not be in harmony with the other residences in the plan or with the character plaintiff desired to establish and maintain for said plan. Defendants nevertheless started excavation and construction on the lot in accordance with their plans which had been rejected. Thereupon this suit was promptly instituted.

To construe the above quoted covenant as being satisfied by the mere submission of plans and specifications to the land company's architect, notwithstanding that he disapproved them, as defendants contend, would render utterly nugatory and futile the last two words of that covenant, viz., "for approval." That construction must therefore be rejected because it is a well established canon of construction of deeds that

they must be construed if reasonably possible so as to give effect to *all* of the language of the instrument and so that none of the words will be rendered nugatory or futile: Brookbank v. Benedum-Trees Oil Company, 389 Pa. 151, 157; Yuscavage v. Hamlin, 391 Pa. 13, 16.

Furthermore, to construe the covenant as being satisfied by the mere submission of plans and specifications to the land company's architect, notwithstanding that they are disapproved by him, would defeat the apparent object or purpose of the covenant, which also would be contrary to law: Yuscavage v. Hamlin, supra.

As a corrollary of the argument considered in the preceding paragraph, defendants argue that the covenant should be construed so as not to authorize the land company's architect to disapprove plans because of any material shown by them to be used in the proposed dwelling. There is no such exclusion of materials from the covenant. Defendants would have the court interpolate into the covenant an exception to the effect that the approval of the land company's architect which is required does not apply to the materials of which the dwelling is to be constructed. Of course, the court cannot interpolate or add any new terms into the executed and recorded deed at this late day. That would be making a new contract for the parties, which our courts wisely abstain from doing.

The pertinent portion of the covenant, which is quoted above, requires the plans and specifications for a proposed construction to be approved by the land company's architect, without in any way limiting the grounds or reasons for which the architect may withhold his approval. Since the covenant in the executed deed to which the parties agreed does not limit the grounds or reasons for which the land company's architect may disapprove plans, it would not be proper

for the court to limit those grounds or reasons as long as they relate to the value, desirability, salability and character of property in the plan of lots in which it is proposed to construct the dwelling, or in other words, are germane to the apparent object and purpose of the restrictive covenant in the deed from the land company.

Manifestly the material of which an outside wall of a dwelling house, which is to be exposed to public view above the surface of the ground, is constructed relates to and has a definite bearing upon the value, desirability, salability and character of a residential district and is clearly germane to the object and purpose for which the restrictive covenant was inserted in the deed from plaintiff land company to defendants. Certainly no one could deny that if exterior walls and the chimney of a dwelling house which are exposed to public view above the surface of the ground are constructed of cheap material, a cheapening effect will be had on the value, desirability, salability and character of a high-class residential district. The covenant requiring the land company's architect to approve the plans and specifications for any house before it can be constructed must therefore apply to the materials of which the exterior of the house is proposed to be constructed, as well as to the design and size of the house. To confine the grounds on which the land company's architect could disapprove plans to the size of the dwelling and to a determination that it was a single family dwelling, as defendants would do, would frustrate the purpose of the covenant.

That a restrictive covenant, such as in this case requiring the approval of a designated party before a building can be erected in a real estate development, applies to materials as well as to other features of the proposed construction has been judicially held: Holl-

ingsworth v. Szczesiak, 32 Del. Ch. 274 (1951) ; Kirkley v. Seipelt, 212 Md. 127 (1957).

That restrictive covenants in a deed in order to protect property values are to be construed and enforced so as to accomplish their purpose has repeatedly been held: Pocono Manor Association v. Allen, 337 Pa. 442; Rabinowitz v. Rosen, 269 Pa. 482.

That a covenant like the one in question which requires the approval of the plans and specifications by the land company's architect before a dwelling can be erected in a plan is valid and enforceable has been specifically held by our Supreme Court: Harmon v. Burow, 263 Pa. 188, 190. In that case our Supreme Court also held that such a covenant in a deed constituted a contract between the parties and that defendant having made it was bound by it. So here defendants are bound by the covenant quoted above from their deed, and the court cannot relieve them from it.

In our opinion the refusal of plaintiff's architect to approve defendants' plans was done in good faith, on reasonable grounds supporting his view and was not a capricious or arbitrary act. Plaintiff's architect, Mr. Frey, is a graduate engineer of Carnegie Tech, has worked for prominent architectural firms in Pittsburgh and is a reputable and competent architect. The opinion which he expressed that the use of exposed concrete blocks in the exterior walls of defendants' proposed residence as shown by the plans would not be in harmony with the other residences in the plan or the character plaintiff desires to establish and maintain for said plan, would detract from the desirability of the plan and the marketability of the lots therein, would cheapen the neighborhood and would depreciate the value of property in the plan belonging to plaintiff and others, we believe represents his honest conviction.

That Mr. Frey's opinion is based upon facts and not merely on fantasy is corroborated by the fact that concrete blocks are not commonly used for the exterior walls and chimneys of residents, at least in Allegheny County.

The best that could be said for defendants is that there is a conflict of opinion among architects as to whether the use of concrete blocks in exposed exterior walls and chimneys of a dwelling house has a cheapening effect. But that would not excuse defendants from the covenant in their deed and to which they agreed because that covenant specifies that the plans must meet the approval of the architect of the Lewis Manor Land Company, not the approval of an architect hired by defendants. The covenant does not say that it will be sufficient if the plans are approved by any architect. The covenant requires the approval of a particular architect, and that in this case was Mr. Frey. He admittedly expressly disapproved the plans because of the proposed use of concrete blocks on the exterior walls exposed to public view and throughout the chimney. Mr. Frey having disapproved the plans in good faith and not capriciously, freakishly, whimsically or humorously, the covenant has not been satisfied and defendants have no right to build a house in accordance with those plans on the lot in question.

Accordingly, we are constrained to continue the injunction until the final hearing and disposition of this case.

### Order

Now, to wit, October 30, 1958, after hearing, argument and due consideration of the briefs filed by the parties, it is hereby ordered, adjudged and decreed that the injunction issued by this court on August 1, 1958, be, and it is hereby continued until the final hearing and disposition of this case on the security heretofore given.