J-A03040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THREE RIVERS ROYALTY, LLC, A TEXAS LIMITED LIABILITY COMPANY, AND MAPLETON MINERALS, LLC, A PENNSYLVANIA LIMITED LIABILITY COMPANY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| LORRAINE CANESTRALE TRUST-C, AND RANGE RESOURCES-APPALACHIA, LLC, A DELAWARE LIMITED LIABILITY COMPANY | : : : : | No. 1302 WDA 2018 |

Appeal from the Order Entered August 10, 2018
in the Court of Common Pleas of Washington County Civil Division
at No(s): Case No. 2017-2788

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER,* J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 21, 2019**

Three Rivers Royalty, LLC ("Three Rivers"), and Mapleton Minerals, LLC ("Mapelton") (collectively "Plaintiffs"), appeal from the August 10, 2018 order that granted summary judgment to Lorraine Canestrale Trust-C ("Canestrale") and Range Resources-Appalachia, LLC ("Range") (collectively "Defendants")[1] in this quiet title action.  We affirm.

---

[1] Range is the lessee of Canestrale and did not separately seek or obtain judgment.  However, the trial court's grant of Canestrale's motion for summary judgment by order that quieted title in the property at issue in Canestrale is final and appealable.  ***See***, ***e.g.***, ***Consolidation Coal Co. v. White***, 875 A.2d 318, 325 (Pa.Super. 2005).

* Retired Senior Judge assigned to the Superior Court.

The pertinent factual and procedural history is as follows. In 1993, Mathies Coal Company sold a group of parcels of land to Mon View Mining Corporation. The deed between Mathies and Mon View provides as follows in relevant part:

DEED

THIS DEED, made and entered into this 1st day of October, 1993, by and between MATHI[E]S COAL COMPANY . . . ("Grantor"), and MON VIEW MINING CORPORATION . . . ("Grantee"),

WITNESSETH:

That for and in consideration of . . . $485,907.75 . . . Grantor by these presents does hereby bargain, grant, sell and convey unto the Grantee, its successors and assigns, all of the following described surface tracts or surface parcels of land located in Washington County, Pennsylvania, together with all improvements located thereon and being the following tracts of land more particularly described as follows:

Being all the property which is described in the Exhibit of Surface Tracts, attached hereto and made a part hereof marked Exhibit 1. Reference is made to the Deeds listed on the Exhibit of Surface Tracts for a more particular description of the property conveyed herein,

with appurtenances:

TO HAVE AND TO HOLD the same to and for the use of the said Grantee, its successors and assigns forever, and the Grantor for itself, its successors and assigns hereby covenant and agree that it will WARRANT SPECIALLY the property herein conveyed.

Amended Complaint, 9/26/17, at Exhibit A.

The "Exhibit of Surface Tracts" included as Exhibit 1 to the deed was a list of more than fifty properties that Mathies had acquired at different times

from various prior owners. The bulk of the properties enumerated therein were acquired by Mathies in 1951 in a conveyance of twenty-six parcels from Pittsburgh Consolidation Coal Company. The deeds for the properties listed in the Exhibit contain additional descriptions of the properties conveyed.

Subsequently, both Mathies and Mon View went through bankruptcy proceedings. By deed of August 6, 2010, Canestrale's predecessor acquired Mon View's interests in, *inter alia*, the Surface Tracts. The 2010 deed conveyed "[a]ll of the right, title, and interest of [Mon View] in and to all those certain coal, mining rights, easements, surface property, and all other property rights of whatsoever nature owned by [Mon View,]" and specifically referenced "oil and gas, oil and gas and/or other leases, [and] oil and/or gas or other wells[.]" Answer, New Matter, and Counterclaim, 10/3/18, at Exhibit 17 (unnumbered page 2). Canestrale leased oil and gas rights to Range in 2014.

Plaintiffs acquired, through another entity, "remnant assets" of Mathies that had not otherwise been disposed of through the bankruptcy liquidation plan of Mathies's parent company, National Steel Corporation. Pursuant to a November 30, 2016 quitclaim deed, Plaintiffs took Mathies's "right, title and interest in, on, and under" a number of parcels of land.[2] Amended Complaint, 9/11/17, at Exhibit B.

---

[2] Three Rivers acquired an undivided 80% interest in the property, while Mapleton took ownership of the remaining 20%.

On June 6, 2017, Plaintiffs filed a complaint in quiet title. Following amendment of the complaint and the caption, Plaintiffs asked that the court quiet title to the oil and gas rights underlying some of the Surface Parcels in them, and declare that Canestrale and Range had no interest in any of the oil, gas, or subsurface mineral rights to the tracts in question ("the Property").[3] Canestrale counterclaimed that it was entitled to have title to the oil and gas rights associated with the Property quieted in it, and that Plaintiffs had no interest in the Property.

Canestrale filed a motion for summary judgment in which it contended that its acquisition of the various tracts from Mon View included the oil and gas rights, as they had not been severed from the surface estate prior to or by the 1993 Mathies-Mon View deed. Therefore, Canestrale argued, Mathies retained no oil and gas rights to the Property, and, as a result, Plaintiffs acquired no such rights through their quitclaim deed. Accordingly, Canestrale maintained that it was entitled to a judgment in its favor and against Plaintiffs.

Plaintiffs filed a cross-motion for summary judgment, essentially raising the inverse arguments. Plaintiffs claimed that Mathies's sale of the "surface tracts or surface parcels," as specified in the 1993 deed, conveyed only the

_____

[3] Specifically, Plaintiffs sought to quiet title to the oil and gas rights associated with the following tract numbers listed in the Exhibit of Surface Tracts to the 1993 Mathies-Mon View deed: 182, 183, 216, 217, 222, 227, 230, 2341, 233, 237, 238, 243, 244, 245, 246, 247, 248, 252, 262, 526, and 530. **See** Amended Complaint, 9/26/17, at ¶ 6.

surface estate and severed therefrom the subsurface oil and gas rights. Plaintiffs thus sought judgment in their favor and against Canestrale and Range based upon the plain language of the Mathies-Mon View deed.

By opinion and order of August 10, 2018, the trial court agreed with Canestrale. The court noted the history of transactions between coal companies, leading it to conclude that the phrase "surface tracts or surface parcels of land" was "given to a group of parcels that were not coal parcels, and were therefore named as surface tracts to distinguish them from coal tracts[.]" Trial Court Opinion, 8/10/18, at 3. Given that deeds are construed under Pennsylvania law to convey all the grantor's interest unless an exception or reservation is included in the deed, and that no such language appears in the Mathies-Mon View deed, the court held that Canestrale established its title to the oil and gas underlying the Property. *Id*. at 3-4 (citing 21 P.S. § 3). Accordingly, the court entered an order that provided that: Plaintiffs have no oil and gas or subsurface mineral interests in the Property; title to the oil and gas rights associated with the property was quieted in Canestrale; Plaintiffs were permanently enjoined from asserting any interest in the oil and gas at issue; and Plaintiffs' amended complaint was dismissed with prejudice. Order, 8/10/18.

This timely appeal followed. Plaintiffs present this Court with the following question: "Whether the trial court erred when it found that a conveyance of 'surface' tracts and 'surface' parcels included the surface *and*

the subsurface, including oil and gas?" Plaintiffs' brief at 4 (emphasis in original.

Before we address Plaintiffs' issue, we consider the contention raised by Canestrale that an indispensable party was not joined in this case. Canestrale argues that parties with whom Canestrale is obligated to share oil and gas royalties pursuant to a deed of royalties are necessary parties to this action.[4] Canestrale's brief at 27-30. We disagree.

"This Court has held that in a quiet title action, all parties who claimed title to the property at issue must be joined as indispensable parties." **Orman v. Mortgage I.T.**, 118 A.3d 403, 407 (Pa.Super. 2015). In the context of oil and gas leases, this Court has determined that lessees are **not** indispensable parties in an action to quiet title in the subsurface estate.[5] **Bastian v. Sullivan**, 117 A.3d 338, 343-44 (Pa.Super. 2015). Rather, the purported title holders are the only necessary parties, as the lessees have no rights "separate and apart from" them. **Id**. at 344. Canestrale offers no authority to suggest

_____

[4] Canestrale offers the alleged failure to join indispensable parties as an alternative basis to affirm the trial court's judgment. Canestrale's brief at 30. However, as Plaintiffs aptly note, if Canestrale were correct, the trial court would have lacked jurisdiction to adjudicate any of the claims, and we would vacate, rather than affirm, the grant of summary judgment. **See** Plaintiffs' reply brief at 12.

[5] By contrast, in an ejectment action, where possession rather than title is at issue, the lessees are the indispensable parties, and it is the title holder who need not be joined. **See Sabella v. Appalachian Dev. Corp.**, 103 A.3d 83, 91-92 (Pa.Super. 2014).

that a different result should apply when royalty rights are at issue, and we decline to so hold.

Having resolved the jurisdictional issue, we turn to the merits of Plaintiffs' claim that the trial court erred in its construction of the 1993 Mathies-Mon View deed. We begin with the pertinent legal principles.

> When construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it.

*Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa.Super. 2005) (citations omitted).

To interpret the language of a deed to ascertain the intent of the parties, the court must consider "the apparent object or purpose of the parties and the conditions existing when it was executed." *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa.Super. 2002). In so doing, it is appropriate for a court to refer to language of earlier deeds in the chain of title in interpreting the deed at issue. *Wagner v. Landisville Camp Meeting Ass'n*, 24 A.3d 374, 379 (Pa.Super. 2011).

We next review the law concerning the different estates in land. "Pennsylvania law recognizes three discrete estates in land: the surface

- 7 -

estate, the mineral estate, and the right to subjacent (surface) support. Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." **White**, **supra** at 326 (citations omitted). "Normally, the owner of the surface estate is also the owner of the mineral rights unless the mineral rights are severed from the ownership of the surface land by grant or exception." **Sedat, Inc. v. Fisher**, 617 A.2d 1, 2 (Pa.Super. 1992). Indeed, our legislature codified this principle, indicating as follows:

> All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, **unless an exception or reservation be made therein**, shall be construed to include all the estate, right, title, interest, property, claim, and demand whatsoever, of the grantor or grantors, in law, equity, or otherwise . . . .

21 P.S. § 3 (emphasis added).

We now consider Plaintiffs' contentions on appeal. Plaintiffs' argument is simple and straightforward: "Surface means surface. It does not mean more; it does not mean less." Plaintiffs' brief at 12. Plaintiffs maintain that the conveyance of "surface tracts or surface parcels of land" in the Mathies-Mon View deed unambiguously referred only to the surface estate, and the trial court's construction ignored the plain meaning of the word surface, rendering its usage purposeless. **Id**.

Canestrale counters that Plaintiffs' interpretation, focused on the word "surface," ignores other language of the deed, namely the indication that Mathies conveyed "all the property" described in the Exhibit of Surface Tracts

and their underlying deeds. Canestrale's brief at 14. Canestrale contends that without an explicit exception or reservation of the oil and gas rights in the Mathies-Mon View deed, those rights were not severed from the surface and were conveyed along with it. *Id*. at 15-16.

Applying the above-discussed law to the language of the deed in context, including its exhibits and documents incorporated by reference, we agree with Canestrale and the trial court that Plaintiffs' predecessor Mathies conveyed the oil and gas rights to Canestrale's predecessor Mon View along with the surface of the land. Hence, because Mathies's remnant assets did not include oil and gas rights to the Property, Plaintiffs did not acquire any such rights and their quiet title claim was properly dismissed. Our reasoning follows.

As indicated above, the 1993 Mathies-Mon View deed conveyed

all of the following described surface tracts or surface parcels of land . . . being the following tracts of land more particularly described as follows:

Being **all the property** which is described in the Exhibit of Surface Tracts, attached hereto and made a part hereof marked Exhibit 1. **Reference is made to the Deeds listed on the Exhibit of Surface Tracts for a more particular description of the property conveyed herein**[.]

Amended Complaint, 9/26/17, at Exhibit A (emphases added).

The Exhibit of Surface Tracts is a three-page list, specifying a tract number, the person or entity who was the grantor to Mathies, the date of the deed that conveyed the tract to Mathies along with the recorded book and

page, and the deed acreage. It is in the prior deeds that the typical property descriptions are found. For example, tract number 182 is a parcel that Mathies acquired in 1951 from grantor Pittsburgh Consolidation Coal Company ("PCCC"), which had acquired it from Rose Andresky. Answer, New Matter, and Counterclaim, 10/3/18, at Exhibit 2, page 19. The deed provides a metes and bounds description, references the prior deed in the chain of title, and includes the following: "EXCEPTING AND RESERVING unto [PCCC], its successors and assigns, all the coal of the several veins in and underlying the above described tract of land, together with the right to mine and remove all of the said coal[.]" *Id*. at page 20. No reference to oil and gas, or any subsurface rights other than coal, is made.

Similarly, tract number 526 is also among the parcels acquired by Mathies from PCCC in 1951. The deed indicates that the parcel previously had been owned by F.M. Kennedy, provides a metes and bounds description of the land, and contains an express reservation and exception of the coal. *Id*. at pages 6-7. The deed also specifies that the conveyance "is made under and subject to" a railway right of way. *Id*. at page 7. Regarding chain of title, the instrument reports that "reference is made to Item (D) under the subheading 'Surface Tracts' in the deed from Pittsburgh Coal Company of Pennsylvania to The Monongahela River Consolidated Coal & Coke Company, dated February 16, 2015 . . . ." *Id*. Oil and gas rights are not mentioned in connection with this tract.

Indeed, of the twenty-one tracts from the Exhibit of Surface Tracts at issue in this case,[6] only three of the underlying deeds that provide "a more particular description of the property conveyed" by the 1993 Mathies-Mon View deed contain any reference to oil and gas. Tract number 183, one of Mathies's PCCC acquisitions, contains a number of exceptions and reservations (coal rights and small amounts of land previously conveyed to a married couple and to a church), and also indicates:

> THIS CONVEYANCE is made under and subject to a lease to Pietro Agostoni for oil and gas purposes and lease to William F. Minteer and John Young for oil and gas purposes, to Mingo Creek, public road, right of way for pipe line and right of way for pole line.

*Id*. at page 26.

Tract number 246, another of the PCCC parcels, includes an express reservation and exception of coal, provides that the conveyance is made under and subject to utility company rights of way, and generically indicates that the property transfer is

> SUBJECT to any exception or reservation affecting the oil or gas rights in and under said tract of land together with such rights to enter upon the surface thereof for the purpose of exploring for and producing said oil and gas insofar as the same may have been excepted or reserved.

*Id*. at page 10. Tract number 227, which Mathies acquired from Elmay and Carl Price in 1956, is one of the few "surface tract" deeds that does not include

---

[6] *See* page 4 n.3, *supra*.

a specific reservation of coal rights. However, the deed does provide that it is "SUBJECT to such sales of coal, grants of mining rights, waivers of surface damages, rights of way, oil and gas leases, etc., as may have been heretofore granted or conveyed by J.A. Scott or predecessors in title." *Id*. at Exhibit 5, unnumbered page 2.

From the above it is clear to us that the "deeds listed on the Exhibit of Surface Tracts," which expressly provided "a more particular description of the property conveyed" from Mathies to Mon View via the 1993 deed, evidenced no severance of oil and gas rights from the surface estates of said "surface tracts." Rather, the parcels were listed among the grantor's "surface tracts" to distinguish them from the previously-severed coal estates underlying those tracts. As the oil and gas rights had not been severed from the surface tracts in the underlying deeds, Mon View took title to the oil and gas underlying the surface when Mathies conveyed "all the property" described by the Exhibit of Surface Tracts to Mon View. Hence, Canestrale acquired title to the oil and gas when it acquired Mon View's interest in the Property.

Our conclusion is informed by the plain language of the instruments. The deeds almost uniformly contain express exceptions and reservations of coal, but none has a specific exception or reservation of oil and gas. Instead, one of the deeds indicates that the title to the oil and gas was conveyed subject to existing leases. Further, tract 526 had been described as a "surface

tract" in an earlier deed conveying the property from one coal company to another. Accepting Plaintiffs' construction of the term "surface tracts," Mathies would have never acquired title to anything but the surface of that parcel, and there would be no basis for Plaintiffs to now claim that they owned the underlying oil and gas. Rather, the instruments support the trial court's determination that the phrase "surface tracts or surface parcels of land" was "given to a group of parcels that were not coal parcels, and were therefore named as surface tracts to distinguish them from coal tracts[.]" Trial Court Opinion, 8/10/18, at 3.

The cases relied upon by Plaintiffs do not warrant a different result. Plaintiffs cite **Yuscavage v. Hamlin**, 137 A.2d 242 (Pa. 1958), for the proposition that "[i]n Pennsylvania, the conveyance of 'surface,' without more, means the grantors conveyed the surface." Plaintiffs' brief at 15. Yet, in that case, the High Court construed "All the surface or right of soil of" two tracts to include all of the grantor's interest in the land, not just the surface. **Yuscavage**, **supra** at 244 (internal quotation marks omitted). The Court acknowledged that, "[w]ithout more it might be argued that the grantors conveyed the surface only[.]" **Id**. (internal quotation marks omitted). However, there was more, in particular, reference to prior ownership and the expression of the intent to convey all the estate, right, and title formerly owned by the predecessors. **Id**. Accordingly the Court adopted the trial court's conclusion, quoted as follows:

Under such circumstances we cannot construe this deed as limited to the surface crust, the mere superficies, such as might be required for agricultural purposes. We are satisfied that the grantors conveyed their entire right, title and interest in and to the land as the deed in the main indicates. It must be remembered that the coal here had already been reserved and removed, and we are convinced that the term "surface" was employed in contemplation of that severance only.

*Id*. at 245. As such, the ***Yuscavage*** decision firmly supports our construction of the Mathies-Mon View deed. ***See also Hendler v. Lehigh Valley R. Co.***, 58 A. 486, 486-88 (Pa. 1904), *overruled in part on other grounds by* ***Hall v. Delaware, L. & W. R. Co.***, 113 A. 669 (Pa. 1921) (construing conveyance of "the surface" of a lot to include all interests but the excepted minerals); ***Burrows v. Pittsburgh Coal Co.***, 2 Pa. D. & C. 291, 292 (Wash. County 1922) ("The word 'surface,' as used in such a provision in a deed, has uniformly been understood and treated in Pennsylvania as referring to the superincumbent strata, and as embracing everything lying above the coal conveyed.").

Nor are we persuaded by Plaintiffs' appeal to West Virginia law. Plaintiffs cite ***Faith United Methodist Church & Cemetery of Terra Alta v. Morgan***, 745 S.E.2d 461, 464 (W.Va. 2013), in arguing that the term surface in a deed conveys merely the exposed area of land, improvements thereon, and any part of the underground adjunct to surface use, such as groundwater and basements. Plaintiffs' brief at 15. In that case, the court overruled largely-ignored precedent holding that the term "surface" in a deed was *per se* ambiguous and subject to interpretation through the use of parol and extrinsic

evidence. The deed actually at issue therein contained additional limiting language, namely conveyance of "the surface **only**." ***Morgan***, ***supra*** at 481 (emphasis added). No such limitation is included in the Mathies-Mon View deed. Thus, in addition to the fact that the decision is not binding on this Court, the case is factually distinguishable. Whether addition of the word only to the deed at issue in this case would warrant a different result, if all of the other language remained the same, is not before this Court.

In sum, with no exception of oil and gas in the Mathies-Mon View deed, the meaning of "surface tracts" apparent from the instrument and the deeds that form the chain of title, and no other qualifying language to suggest that the surface estate alone was being conveyed to the exclusion of all subsurface rights, the trial court properly quieted title to the oil and gas underlying the Property in Canestrale and dismissed Plaintiffs' competing claim.

Order affirmed.

Judge Shogan joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/21/2019

- 15 -