Hendler *v.* Lehigh Valley Railroad Company, Appellant.

*Deed—Reservation—Minerals—Sand.*

In the commercial sense a mineral may be defined as any inorganic substance found in nature, having sufficient value separated from its situs as part of the earth, to be mined, quarried, or dug for its own sake, or its own specific uses.

While a vein of pure white quartz sand, valuable for making glass or other special use, may be within a reservation of " coal and other minerals " in a deed, common mixed sand merely worth digging, and removing as material for grading, will not be.

The conveyance of the surface of land, together with all the ways,

waters, water courses, rights, liberties, privileges and appurtenances, and all the estate, etc., of the grantor, but reserving all coal and other minerals, passes more than the mere superficies of the land for farming purposes, and covers the entire fee except mining for the reserved minerals or interfering with the grantor in such mining.

*Railroads—Eminent domain—Agreement with landowner—Use of material excavated from land.*

When a railroad company obtains a right of way, either by condemnation or by an agreement with the landowner, it has the right to use without further compensation all the suitable material, except timber, within the lines of its right of way for the construction of its road through the property of the landowner ; but if the railroad company goes outside of the lines of its right of way and excavates and takes for its own use material such as common mixed sand, it must pay the landowner the value of such material taken.

The right to take materials extends no further as against each owner than the boundaries of his own land which has been subjected to a servitude for the construction and maintenance of a railroad through it, but not for construction and maintenance through any other land. For materials taken, which if used in construction upon his own land the owner would not be entitled to be compensated if used by the railroad company elsewhere it must pay him.

Argued April 12, 1904. Appeal, No. 280, Jan. T., 1903, by defendant, from order of C. P. Luzerne Co., March T., 1903, No. 276, dismissing exceptions to report of referee in case of Joseph Hendler v. Lehigh Valley Railroad Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for excavating and taking common mixed sand.

By agreement the case was referred to Rush Trescott, Esq., as referee.

From the record it appeared that on March 3, 1877, the Northern Coal & Iron Company conveyed the land, from which the sand was taken, to Peter Jumper, " excepting and reserving, however, to the said the Northern Coal and Iron Company, their successors and assigns, all the coal and other minerals in, under, or upon said lot of land, and also reserving, as aforesaid, the unrestricted right and privilege of mining and removing all of said coal and minerals, or any part thereof."

On December 7, 1887, Peter Jumper and wife conveyed the land to the Lehigh Valley Railroad Company " excepting and

reserving, however, to the Northern Coal and Iron Company, its successors and assigns, all the coal and other minerals under, in or upon said lot of land."

On September 30, 1890, the Lehigh Valley Railroad Company conveyed the land in question to Joseph Hendler. The deed after the description continued as follows:

" Being part of the same property conveyed to the party of the first part by Peter Jumper and wife by deed dated 7th December, 1887, and recorded in the Recorder's Office in Luzerne County, in Deed Book No. 266, page 394, etc.

" Excepting and reserving as fully and entirely as in the said indenture is excepted and reserved and further excepting and reserving all the gravel necessary for any fill or ballast for the railroad of the party of the first part, and the right to build a dam upon the said premises and flood the same with water, and to lay pipes across and under said premises, and to construct and maintain thereon such pump house or houses as may be necessary for the enjoyment of the rights and estate hereby reserved. Being also the same premises designated on the draft hereto annexed and made part of this indenture.

" Together with all and singular the ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the party of the first part in law, equity, or otherwise howsoever of, in and to the same and every part thereof."

By an agreement in writing dated June 1, 1901, Hendler granted, bargained and sold to the Lehigh Valley Railroad Company a right of way fifty feet in width over the land in question.

In constructing a railroad over this right of way the railroad company used a large quantity of sand taken from plaintiff's land, outside of the right of way. Plaintiff claimed treble damages for the taking of this sand. The referee refused to allow treble damages, and entered judgment in plaintiff's favor for $1,859.90.

Exceptions to the report of the referee were dismissed by the court.

*Errors assigned* were in overruling exceptions to report of referee.

*Stanley Woodward*, of *Woodward, Darling & Woodward*, for appellant.—Sand is a mineral within the meaning of the Act of May 8, 1876, P. L. 142: Com. v. Hipple, 7 Pa. Dist. Rep. 399; Griffin v. Fellows, 81* Pa. 114.

The law on the subject of the title to the materials taken from the right of way of a railroad company is that everything taken above the grade of the road may be used on other portions of the road: 1 Redfield on Railways, 264; 1 Wood's Railway Law, 658.

*F. M. Nichols*, with him *F. C. Sturges*, for appellee, cited: Dunham v. Kirkpatrick, 101 Pa. 36; Shoenberger v. Lyon, 7 W. & S. 184.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 23, 1904:

The first question presented by this case is whether the sand, the taking of which is the trespass sued for, is a mineral within the meaning of the deed between the parties.

In the broadest sense, as belonging to one of the three great divisions of matter, animal, vegetable and mineral, sand of course is a mineral. In the more restricted scientific sense sand may or may not be a mineral according to what it is composed of. In the language of mineralogists air and water are minerals while granite and similar rocks are not minerals but aggregations of minerals. So it is of sand; it may be wholly of grains of silex or other mineral or it may be of several mixed together, and therefore in the technical sense only grains of rock.

It is perfectly clear that the parties here did not use the word mineral in either of the foregoing senses. The first grantor with whom we are concerned, the Northern Coal and Iron Company, conveyed the land to Jumper reserving " all coal and other minerals in, under and upon said land; " Jumper conveyed to defendant with a similar reservation; and the subsequent deed by defendant to plaintiff conveyed the "·surface " of the land " excepting and reserving as fully and entirely as in the said (preceding) indenture is excepted and reserved, and further excepting and reserving all the gravel necessary

for any fill or ballast for the railroad," etc. If the word mineral had been used in either of the senses already mentioned it would as a matter of course have included gravel, and the additional special reservation of the gravel shows that the parties did not consider it as included in the preceding general reservation.

But there is another, and what may be called the commercial sense in which the word mineral is used, and in which having reference to its supposed etymology of anything mined, it may be defined as any inorganic substance found in nature, having sufficient value separated from its situs as part of the earth to be mined, quarried or dug for its own sake or its own specific uses. That is the sense in which it is most commonly used in conveyances and leases of land, and in which it must be presumed that it was used by these parties in the deed in question. "Coal and other minerals," the expression used, indicate substances which, like coal, have a value of their own, apart from the rest of the land, sufficient to induce the expense and labor of severance for their own sakes. These the grantor intended and expressed the intention to except from his grant and reserve to himself. While coal was the principal and perhaps the only thing clearly in view, yet the reservation was not meant to be limited to that, for then the addition "and other minerals" would be superfluous and misleading. A vein of fine marble would clearly be reserved, and so probably if near enough a market to have a value, would be granite, or limestone or other building material, potter's or porcelaine clay and the like.

Sand might or might not be in this category. A vein of pure white quartz sand, valuable for making glass or other special use, would be within the reservation, while common mixed sand merely worth digging and removing as material for grading, would not be. The referee has found that the sand which is the subject of the present contention was of this latter character, and was taken and used not for any intrinsic value or use of its own, but as part of earth and other material to fill up the roadbed to the proper grade. So regarded and used it was not within the reservation.

The next question is the estate of the plaintiff in the land. The conveyance to him was of "the surface of all that certain

lot of land," with a reference to the deed in the line of title from Jumper to the Lehigh Valley Railroad Company already discussed and "excepting and reserving as fully and entirely as in the said indenture is excepted and reserved and further excepting and reserving all the gravel necessary for any fill or ballast for the railroad of the party of the first part, and the right to build a dam upon the said premises and flood the same with water," etc.; followed by the usual grant "together with all and singular the ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the party of the first part in law, equity or otherwise howsoever of, in and to the same and every part thereof."

It is not a fair construction of this grant to limit it to such mere superficies of the land as may be required for agricultural purposes even including in such use the building of houses and barns, digging of wells, etc. The words used, especially those descriptive of the hereditaments and appurtenances, including " all the estate, right, title, interest, property," etc., of the grantor, are too broad to make such construction reasonable. The fairly apparent intent was to convey to the grantee the entire fee in the land, to use for all purposes except mining or taking the excepted minerals or interfering with the grantor's reserved right to do so. The learned referee was therefore right in his conclusion that plaintiff had such estate as enabled him to maintain this action.

The remaining question is the extent of appellant's right to use the materials on the right of way, without compensation. The right of way was acquired by agreement with the landowner, and it was practically conceded in the argument here that the learned referee was correct in his conclusion that the railroad acquired the same right, title and interest under the agreement that it would have acquired by condemnation under the statute.

By the Railroad Act of February 19, 1849, sec. 10, P. L. 79, the railroad company is authorized to enter upon lands surveyed and located for its right of way and thereon to " dig, excavate and embank, make, lay down and construct " the road. The use

of the materials so dug, excavated, etc., is necessarily implied in the authority to construct, and compensation for them is included in the assessment of compensation or damages for the land taken. This is made still more plain by the further provision in the same section that " it shall in like manner be lawful . . . . to enter upon any lands adjoining or in the neighborhood of their railroad so to be constructed and to quarry, dig, cut, take and carry away therefrom, any stone, gravel, clay, sand, earth, wood or other suitable material, necessary or proper for the construction of any bridges, viaducts or other buildings which may be required for the use, maintenance or repair of said railroad," with proviso that compensation shall be made for such materials and an exceptional proviso as to timber that it shall be obtained from the owner only by agreement or purchase.

When therefore a railroad company obtains a right of way, either by condemnation, or as in this case by an equivalent agreement, it has the right to use without further compensation all the suitable materials, except timber, within the lines of its way, for the construction of its road through the property of the landowner. Whether such materials are above or below the grade of the road makes no difference. The language of the act is not limited by any such considerations. If it is necessary to go outside the lines of their way for sufficient width to support an embankment they may do so but must pay for the additional land occupied, and so if it is necessary to go outside the lines to give the walls of a cut the slope required to prevent sliding or washing down, they may do so on paying for the additional materials taken outside. But within the lines the materials are part of the land taken, and compensation for it includes the whole.

The right however extends no further as against each owner than the boundaries of his own land. His land has been subjected to a servitude for the construction and maintenance of a railroad through it, but not for construction or maintenance through any other land. For the use of his land or materials for the latter purpose he has not been compensated, and if they are taken for that purpose, it must be under the clause of the act as to adjoining or neighboring land already quoted, and upon additional compensation.

The referee in the present case has found that the defendant "took, carried away and converted to their own use from the lands of the plaintiff described in the declaration, sand to the amount of 3,542½ cubic yards, equal to 5,314 tons," and entered judgment for this quantity at the valuation of thirty-five cents a ton. As that quantity was taken from plaintiff's land, carried away and used on other land, defendant was responsible for its value. Under the circumstances of the taking and use the place, whether above or on or below the grade of the road, and whether within or outside the limits of the right of way was immaterial. Though not reached for exactly the reasons indicated in this opinion the referee's conclusion was correct.

Judgment affirmed.