# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00243-CV

**Wilderness Cove, Ltd., Appellant**

**v.**

**Cold Spring Granite Company, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 20299, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

Wilderness Cove, Ltd. ("Wilderness Cove") appeals the judgment of the trial court declaring that Cold Spring Granite Company ("Cold Spring") holds an undivided interest in the granite on the property that is the subject of this lawsuit, and that Cold Spring may enter that property to quarry and remove its granite. The issues presented by this appeal are: (1) did the acquisition of the granite by Cold Spring's predecessor give it a severable estate in land, *i.e.*, the granite deposit in place, and if so, (2) is the severable granite estate the dominant estate? These appear to be issues of first impression.[1] The trial court answered both questions in the affirmative. We will affirm the judgment of the trial court.

---

[1] Texas has an abundance of authority dealing with similar questions as applied to oil and gas conveyances, but we have found no authority which confronts these questions directly.

**BACKGROUND**

The controversy between Wilderness Cove and Cold Spring focuses on an approximately 300-acre tract of land in Burnet County (the "Property"). Ownership of the Property originally passed from the state to private individuals in 1845. By 1890, title to the Property was held in fee by G.W. Lacy and four others as tenants in common. In 1890, Lacy and two of his cotenants conveyed their interest in the granite located on the Property to the Texas Capitol Granite Company ("Texas Granite").[2] The deed conveyed "all of our interest in and to the Granite on the . . . land together with the necessary right of way to the extent of our interest in the same for constructing a Rail Road and for quarrying and handling the said Granite."[3] The crux of this appeal involves the legal implications of this conveyance.

At the time of the conveyance, Lacy and the two other grantors owned a one-half undivided interest in the Property in fee. The remainder of the Property was held in fee by two other parties who did not join in the granite conveyance. Therefore, the Granite Deed conveyed a one-half undivided interest in the granite to Texas Granite. However, the remainder of the interest in the granite continued to be held by the two non-joining cotenants. Lacy later acquired all of his original cotenants' remaining interests in the Property, resulting in his ownership of the Property in fee, less only the one-half undivided interest in the granite that had been conveyed to Texas Granite. Although

---

[2] The actual conveyance covered far more land than is at issue here. The deed describes a series of nine tracts whose composite size approaches 1500 acres. Some of the tracts were conveyed in fee simple. In some of the tracts only the granite was conveyed, as was the case here. The 300-acre tract of land involved in this case was listed in the deed as tract number seven.

[3] We will follow the parties' nomenclature and refer to the 1890 deed as the "Granite Deed."

2

the Property has been the subject of numerous complicated transactions and conveyances since 1890, the parties stipulate that today Wilderness Cove holds title to the surface estate[4] and a one-half undivided interest in the granite and Cold Spring holds title to an unspecified fractional interest in the other one-half of the granite.

This dispute arose primarily because the Property's character has changed since the granite was conveyed in 1890. Approximately 30 acres now fronts on Lake LBJ, making the Property more attractive for residential or recreational use. In fact, Wilderness Cove purchased the property on July 12, 2000, with the intent to subdivide and develop the 30-acre lakefront parcel for residential use. However, in 1890, the Property was most valued for its granite reserves because the "new" state capitol building was being constructed in Austin with "Texas red granite" from Burnet County. The demand for granite was so high at that time that the consideration paid for the granite estate was $200,000, or approximately $30 per acre.[5] However, the granite was not then, and has never been, quarried.

---

[4] As will be discussed later, however, following the 1890 conveyance Lacy's original undivided one-half interest in the surface estate became *burdened* with the legal effect of the granite conveyance.

[5] Testimony in the record revealed that Lacy purchased his undivided one-half fee interest in the Property for approximately $0.50 per acre in 1881. The appellant points out, however, that the original 1890 conveyance involved some degree of self-dealing since Lacy was the founder of Texas Granite. As a result, the appellant questions whether $200,000 was an accurate market price for the granite in 1890. However, at least one subsequent transaction for granite deposits, including those located on the Property, yielded a sale price of $100,000 which, at the turn of the Twentieth Century, was a substantial sum.

This dispute erupted once Wilderness Cove began preparing the Property for development. Cold Spring sought a restraining order prohibiting Wilderness Cove from drilling holes or placing explosive charges into the granite. In the ensuing litigation, both parties sought declaratory and injunctive relief as to their respective rights in the Property. Wilderness Cove also sought to partition the Property. The trial court severed the action for declaratory relief, leaving the partition question to be resolved following the conclusion of this appeal.

The trial court, after hearing the evidence, issued a letter ruling which sets out the reasons for its decision.[6]

> By all current tests, granite is a mineral. The "ordinary and natural meaning" test of *Moser*[7] would imply this result. Regardless of that test, which is unnecessary because we have a specific conveyance and are not interpreting intent of the amorphous "other minerals" phrase, the granite conveyed to Cold Spring's predecessors in title was clearly entitled to status as the dominant estate at the time of the original conveyance. Without the right to exploit the granite the severance by conveyance has no meaning.
>
> The parties are, without dispute, cotenants.
>
> Simply as cotenants in granite, there appears to be neither legal precedent nor logic that would prevent one of them from developing the granite without the consent of the other.
>
> Under *Byrom*[8] the one cotenant clearly is permitted to proceed without consent of the other cotenant.

---

[6] Although we quote portions of the letter ruling, we acknowledge that it has no legal effect.

[7] *Moser v. United States Steel Corp.*, 676 S.W.2d 99 (Tex. 1984).

[8] *Byrom v. Pendley*, 717 S.W.2d 602 (Tex. 1986).

The fugitive substance rationale which originated in *Burnham*[9] is supportive of the result in *Burnham* and in *Byrom*; but

Those cases just happen to be oil and gas cases—a natural circumstance since most of the mineral law in Texas has arisen in that context; and

The primary principle in those cases must, in the view of this Court, be rooted in the basic rules of cotenancy.

(Footnotes added.) The trial court then issued a declaratory judgment and issued findings of fact and conclusions of law consistent with the letter ruling. From this judgment, Wilderness Cove appeals.

## DISCUSSION

Our primary duty in interpreting the Granite Deed is to ascertain the intent of the parties. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). The 1890 Granite Deed evidences a clear intent by the Lacy grantors to convey the deposit of granite *in situ*. Neither party challenges the validity of the Granite Deed, but they disagree as to the effect of the conveyance. Cold Spring claims a severed mineral estate in the granite while Wilderness Cove contends that the Granite Deed merely conveyed the granite, which is a building stone and not a mineral, and added Texas Granite and its successors as a cotenant in that specific portion of the surface estate.

---

[9] *Burnham v. Hardy Oil Co.*, 147 S.W. 330 (Tex. Civ. App.—San Antonio 1912), *aff'd*, 195 S.W. 1139 (Tex. 1917).

### *The Granite Estate*

It is well settled that landowners, on whose property minerals have been or may be found, may retain the fee or a lesser estate in the surface and convey severable and distinct estates in the minerals to third parties. *See, e.g., Benavides v. Hunt*, 15 S.W. 396 (Tex. 1891). In 1890, Lacy possessed an estate in land which was something less than a fee simple absolute. He chose to convey a similar estate in the granite to Texas Granite, while retaining his interests in the remainder of the Property. The clear intent of the conveyance is to sell the granite in place. While Wilderness Cove recognizes that it shares its ownership of the granite with Cold Spring, it does not regard the granite as a mineral.

In support of its position, Wilderness Cove directs this Court to cases where the mineral estate has been severed from the surface estate by the use of general terms. In *Heinatz v. Allen*, 217 S.W.2d 994 (Tex. 1949), by the terms of a will, real estate was severed by devising "the surface rights exclusive of the mineral rights" to one heir and "the mineral rights" to another. The heir who obtained the mineral rights entered the property and began to quarry limestone. The surface owner objected and filed suit, claiming that limestone could not be considered a mineral for the purpose of the devise and, therefore, it belonged to the surface estate.

In determining whether limestone was in fact a mineral, the Texas Supreme Court looked at the character of the limestone and the process by which it could be severed and removed from the ground. The court noted that the limestone lay fairly close to the surface and in outcroppings and that its removal required quarrying. The court also discussed the evidence that

6

showed much of the limestone was not merchantable because its composition was such that the costs

of quarrying it would exceed the revenue realized from its sale. In determining whether a deposit is

part of a severed mineral estate, the court stressed the importance of commercial value:

> In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word *unless they are rare and exceptional in character or possess a peculiar property giving them special value*, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement. Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word.

*Heinatz*, 217 S.W.2d at 997 (emphasis added). Because the limestone was not rare or of exceptional

character, the court held that it did not fall within the ordinary and natural meaning of a mineral.[10]

Therefore, the court held that the limestone was not a mineral and that it belonged to the surface

estate.

---

[10] In further discussion, the Texas Supreme Court referred to a decision by the Pennsylvania Supreme Court discussing what was reserved to the mineral owner in a reservation of "coal and other minerals." The Pennsylvania court also focused on the value of the substance and said that a vein of fine marble or pure white quartz sand, valuable for making glass, would be included in a general mineral reservation. The Texas Supreme Court recognized that the focus of that dispute was sand that, like the limestone in its case, was of relatively poor quality.

However, it is worth noting that the Texas Supreme Court quoted the Pennsylvania court for the proposition that included in a mineral reservation "*if near enough a market to have a value, would be granite or limestone or other building material . . . .*" *Heinatz v. Allen*, 217 S.W.2d 994, 999 (Tex. 1949) (emphasis added by the Texas Supreme Court) (quoting *Hendler v. Lehigh Valley R.R. Co.*, 58 A. 486, 487 (Pa. 1904)).

As additional support for the proposition that stone is not a mineral, Wilderness Cove cites a line of cases involving disputes concerning the "other minerals" clause in reservations of "oil, gas and other minerals." *See Moser v. United States Steel Corp.*, 676 S.W.2d 99 (Tex. 1984)*; Reed v. Wylie*, 597 S.W.2d 743 (Tex. 1980) (*Reed II*); *Reed v. Wylie*, 554 S.W.2d 169 (Tex. 1977) (*Reed I*); *Acker v. Guinn*, 464 S.W.2d 348 (Tex. 1971). In these cases, the supreme court struggled to determine whether certain unspecified deposits of materials were intended to fall within the mineral or surface estates. Eventually, as Wilderness Cove notes, the supreme court held that building stone belongs to the surface estate as a matter of law. *See Moser*, 676 S.W.2d at 102. However, each of these cases, including *Heinatz*, involves a general and ambiguous devise, reservation, or conveyance of the mineral estate. Most of the cases involve a purported conveyance by implication of an undescribed mineral referred to within the reservation clause as an "other mineral." Accordingly, this line of cases is distinguishable from our case because we are confronted with an express conveyance of an *in situ* deposit of granite.

Further, even applying the *Heinatz* test to these unique facts, the granite located on the Property does possess rare and exceptional characteristics that give it special value. The extraordinary prices paid for the granite interest in the 1890s demonstrate its value because only Burnet County, Texas, red granite was used in building the capitol building in Austin.

Finally, Cold Spring provides additional authority that discusses a specific conveyance which severed the mineral and surface estates. *See Schwartz v. State*, 703 S.W.2d 187 (Tex. 1986). The dispute in *Schwartz* focused on whether the Legislature intended to reserve the coal and lignite under a tract of land when it deeded the surface estate but retained all minerals. The Texas Supreme

Court recognized that it had previously held that near surface coal and lignite belonged to the surface estate as a matter of law. *See Reed II*, 597 S.W.2d at 748. However, the court distinguished the situation in *Schwartz* because the grant was express rather than general in its intent. Using the controlling rules of construction, the court was able to ascertain the Legislature's specific intent behind the reservation of minerals expressly specified in the conveyance. The supreme court then held that the proper interpretation of the conveyance was that the state meant to withhold all of the coal and lignite located under the surface of the land that was granted, regardless of whether extracting these minerals would destroy the surface estate. The court recognized that "when there is an express conveyance of a specific substance," the rules of presumed intent announced in earlier cases do not apply because they are merely rules for construing ambiguous and generic conveyances. *Schwartz*, 703 S.W.2d at 189.

In examining a deed containing a specific conveyance of a mineral interest, courts must strive to give effect to the intentions expressed in the document itself. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 788 (Tex. 1995). The Granite Deed specifically conveys the granite on the Property. We have previously recognized that, with respect to oil and gas, Texas adheres to the "ownership in place" doctrine and, it is well established under this doctrine that a severance creates a separate corporeal estate in the minerals. *Bagby v. Bredthauer*, 627 S.W.2d 190, 194 (Tex. App.—Austin 1981, no writ). We are persuaded that this rule should apply to specific conveyances of minerals other than oil and gas. Here, the clear intent expressed in the Granite Deed was to convey the *in situ* granite deposit as a severable estate. Accordingly, we hold that the specific conveyance of the *in situ* granite deposit created a severable mineral estate.

### *The Dominant Estate*

The law regards a mineral estate as dominant, meaning the mineral owner has the right to make necessary and reasonable use of the surface to remove the minerals. *Plainsman* , 898 S.W.2d at 788. This is an imperative rule of mineral law because without the right to reach and extract the minerals, a mineral estate would be worthless. *Moser*, 676 S.W.2d at 103. Thus, Cold Spring puts forth the argument that, as a mineral estate, the granite estate must be dominant. The basic rule of mineral law supports Cold Spring's position. However, Wilderness Cove asserts that the issue is more complex because the situation here involves a cotenancy in the granite estate with a nonconsenting cotenant at the time of the creation of that granite estate.

We note initially that Lacy and his fellow grantors intended to convey their granite interest in the Property, thereby burdening their remaining surface estate. The language in the Granite Deed expresses this intent. Furthermore, we also must assume that Lacy understood that the result of his conveyance might destroy a portion of the surface estate and that he accepted reasonable consideration in return for the conveyance.

> It is reasonable to assume a grantor who expressly conveys a mineral which may or must be removed by destroying a portion of the surface estate anticipates his surface estate will be disminished [sic] when the mineral is removed. It is also probable the grantor has calculated the value of the diminution of his surface in the compensation received for the conveyance.

*Moser*, 676 S.W.2d at 103. The language in the Granite Deed provides unequivocal evidence that the parties understood the conveyance to establish a dominant granite estate.

10

However, our inquiry does not end here. Wilderness Cove contends that the Granite Deed was ineffective in creating a dominant estate because, as a cotenant in the Property, Lacy could not grant Texas Granite the rights to enter the Property and destroy the surface estate without the consent of all of the cotenants. Wilderness Cove further contends that the Granite Deed failed to convey a valid easement because Lacy did not exercise his right to partition the Property prior to making the 1890 conveyance. As a result, Wilderness Cove argues that Cold Spring owns an interest in the granite, but it has no legal right of entry to access it. Wilderness Cove claims Cold Spring's only right is to receive a portion of the proceeds if Wilderness Cove ever chooses to quarry and sell the granite. Wilderness Cove cites no authority supporting its position and we reject its thesis.

A deed by one cotenant, without the consent or participation of other cotenants, may only convey such interest as the maker of the deed possesses. *Thomas v. Southwestern Settlement & Dev. Co.*, 123 S.W.2d 290, 297 (Tex. 1939). However, the law does not require a cotenant to partition the property *prior* to a conveyance; the nonparticipating cotenants simply retain their interest until such time as they convey it or seek partition. *See id.* The right to partition is incident to every tenancy in common; this right may be exercised by anyone holding an ownership interest in the property. Tex. Prop. Code Ann. § 23.001 (West 2000). Lacy did not choose to partition *prior* to conveying his interest in the Property to Texas Granite, but because Lacy only conveyed what he had, the conveyance was valid. Lacy's right to partition and his rights to the *burdened* surface estate passed to his grantee and assigns. We reject Wilderness Cove's argument that the Granite Deed was an invalid transfer absent a partition prior to the original conveyance.

11

Wilderness Cove correctly asserts that one cotenant may not grant an easement or dedicate any portion of the property to a third party without the consent of his cotenants. *Elliott v. Elliott*, 597 S.W.2d 795, 802 (Tex. Civ. App.—Corpus Christi 1980, no writ). However, the Granite Deed did not grant an easement over the Property; it merely *burdened* the grantors' undivided one-half interest with a severed granite estate.

Therefore, applying these principles to the conveyance in question, we conclude that Cold Spring's severable granite estate is the dominant estate. We affirm the judgment of the trial court.

—

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: November 15, 2001

Publish