J-A12032-15

2015 PA Super 184

| | |
|---|---|
| ALBERT M. VOSBURG, III,<br><br>Appellee<br><br>v.<br><br>NBC SEVENTH REALTY CORP., AND PITTSTON AREA INDUSTRIAL DEVELOPMENT CORP.,<br><br>APPEAL OF: NBC SEVENTH REALTY CORP. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br>No. 1552 MDA 2014 |

Appeal from the Order Entered June 3, 2014
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 91-E-2002

BEFORE:  BOWES, DONOHUE AND ALLEN, JJ.

OPINION BY BOWES, J.:                    **FILED SEPTEMBER 02, 2015**

NBC Seventh Realty Corporation ("NBC") appeals from the trial court's order denying its motion to vacate the trial court's order granting partial summary judgment[1] in favor of the heirs of Albert and Katherine Vosburg

_____

[1] By order dated June 27, 2014, the trial court denied NBC's motion to determine finality, or in the alternative, certify the interlocutory order for appeal.  NBC filed a petition for review to this Court seeking review of an uncertified, interlocutory order pursuant to Pa.R.A.P. 341(c)(4), which authorizes the filing of a petition for review within thirty days of the order denying the application for a determination of finality.  This Court granted the petition for review on September 18, 2014.

(collectively the "Vosburgs")[2] and its own motion for summary judgment.

We reverse and remand for the entry of summary judgment in favor of NBC.

This litigation involves property in Luzerne County that was conveyed

by Albert M. and Katherine Vosburg to Anthony Fritz by deed ("Deed") dated

May 11, 1951.  The Deed conveyed

> all that certain piece or parcel of land situate in the Township of Pittston . . . bounded and described as follows, to wit:
>
> BEGINNING at a corner of land now or late of Norman Lampman in the east line of David Young Warrant; thence along said Warrant line North seventy and eight-tenths (70.8) rods to a stone corner; thence, East two-hundred twenty-six (226) rods to a stone corner; . . .
>
> **EXCEPTING AND RESERVING all coal and other mineral beneath the surface of said described land, with the right to mine and remove the same by subterrane mining.**
>
> **IT IS UNDERSTOOD AND AGREED that no buildings erected on said land, or field under cultivation, will be disturbed by said mining.**
>
> Being the same land described in a deed from Burr B. Vosburg, single to Albert M. Vosburg, male grantor herein, dated 18[th] of February, 1930, and recorded in the office of Recorder of Deeds in and for Luzerne County in Deed Book No. 1066, Page 631.

Deed, 5/11/51, at 1 (emphases supplied).

---

[2]  This action was originally commenced by Albert M. Vosburg III, who claimed sole ownership of the coal and mineral rights reserved in the 1951 Deed.  He subsequently renounced his claim to sole ownership of the reserved mineral estate and filed a third amended complaint in June 2003 in which he acknowledged other heirs of Albert M. and Katherine Vosburg as parties with an interest in the mineral estate and joined them as plaintiffs. The caption does not reflect their joinder.

The Fritz parcel was subsequently sold to the Pittston Area Industrial Development Corporation ("PAID").[3]  In 2002, NBC Realty purchased 105 acres of land from PAID to build a commercial distribution center.  Approximately fifty of those acres consisted of the Fritz parcel, which was subject to the foregoing mineral rights reservation.  Construction of the building, parking areas, and access roads necessarily involved excavation and regrading of the surface to accommodate this use.  The contractors used crushed rock from the site and procured additional material from an off-site source as fill.

On October 11, 2002, Albert Vosburg III filed a complaint against NBC and PAID alleging that the aforementioned excavation and processing of rock on the site constituted trespass and conversion of the mineral rights estate.  Specifically, he alleged that NBC and PAID exceeded their surface rights when they excavated hardened shale on the Fritz parcel to a depth of approximately fifty feet and removed and processed the rock for use as sub-base and fill for the construction of the warehouse on the property.  He

_____

[3] PAID did not file a notice of appeal and thus is not participating in the within appeal.

contended that the hardened shale was a mineral under Pennsylvania law with a minimum value of $3.00 per ton.[4]

NBC denied that it removed any rock from the Fritz Parcel. It contended further that the rock herein was not a mineral because it was not metallic. Finally, NBC maintained that the rock herein, located on and near the surface, was not contemplated within the mineral reservation since it was not extractible by underground mining.

On June 10, 2010,[5] the Vosburgs moved for partial summary judgment on two issues. First, they asked the court to rule that they are the owners of the mineral estate.[6] Second, they sought a determination that PAID and NBC's use of the property constituted a trespass of their mineral estate and conversion of the minerals located therein. The trial court applied the scientific definition of a mineral and held as a matter of law that rock was a mineral. It then concluded that the cut and fill work of NBC and PAID

_____

[4] The nature of the rock remains disputed. The Vosburgs refer to the extracted material as hardened shale, sandstone, and rock. NBC offered the results of test borings that revealed that the Fritz Parcel consisted of sand, silt, gravel, and disintegrated rock in the top five feet of the strata, and "moderately to slightly fractured" sandstone below that depth. However, that factual dispute is not material to our disposition of this appeal.

[5] The record reveals that there were extensive periods when the Vosburgs failed to actively prosecute this action.

[6] The court's ruling that the Vosburgs are owners of the mineral reservation is not challenged on appeal. The controversy before us turns on whether rock is included within that mineral reservation.

constituted a trespass of the mineral rights reservation, and the crushing of the rock for use as fill and support was a conversion. On December 3, 2010, the court granted partial summary judgment in favor of the Vosburgs.

On March 11, 2014, NBC sought to vacate the trial court's December 3, 2010 order and moved for summary judgment in its favor based upon the Supreme Court's decision in *Butler v. Charles Powers Estate*, 65 A.3d 885, 898 (Pa. 2013). Following oral argument, the trial court denied the motion to vacate. This Court granted NBC's petition for review of the order on September 18, 2014, resulting in the instant appeal. NBC presents two issues for our review:

> 1. Is it error under Pennsylvania law for a trial court to construe the term "mineral" in a private deed reservation to include rock on the basis that rock is within the scientific understanding of "mineral"?
>
> 2. Is it error under Pennsylvania law for a trial court to hold that a plaintiff owns rock based upon a private deed reservation for "coal and other mineral" where the parties to the deed did not include "rock" in the text of the deed and the plaintiff did not plead or produce clear and convincing proof that the parties to the deed intended to include rock within the reservation?

Appellant's brief at 2.

Both of NBC's issues implicate the propriety of the trial court's grant of partial summary judgment in favor of the Vosburgs.

> Our scope of review . . . of summary judgment orders . . . is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in

the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Alexander v. City of Meadville*, 61 A.3d 218, 221 (Pa.Super. 2012) (internal citations omitted).

NBC contends first that the trial court erred as a matter of law in holding that rock is a mineral based solely upon the scientific definition of mineral. It argues that our Supreme Court in *Butler* rejected the scientific definition when construing the meaning of minerals in reservations in private deeds and confirmed that the meaning is "to be determined not by principles of science, but by common experience directed to the discovery of intention." *Butler*, 65 A.3d at 898. According to NBC, in reaffirming that a reservation of "coal and other mineral" in a private deed presumptively does

- 6 -

not include natural gas and oil, the **Butler** Court acknowledged that the common layperson's understanding of "mineral" encompasses only materials that are metallic in nature, such as gold, silver, iron, copper, and lead. **See Gibson**, 5 Watts 34 (Pa. 1836); **Dunham v. Kirkpatrick**, 101 Pa. 36 (1882). NBC relies upon this language in **Butler** in support of its contention that the non-metallic rock at issue is presumptively not a mineral.

Additionally, NBC contends that it is clear from the language of the Deed reservation that only coal and minerals beneath the surface that could be removed and mined "subterrane" were included in the reservation. Rock that could only be quarried rather than deep-mined was not contemplated within the mineral reservation.

Our courts have wrestled for almost two centuries with the meaning of the term "mineral" in private deeds and conveyances. In **Dunham**, **supra**, the Court acknowledged that virtually all inorganic materials are minerals in the general sense, but that the meaning of the word as used in a deed reservation or grant had to be limited in order to leave something for the other party. The **Dunham** Court reasoned:

> It is true that petroleum is a mineral; no discussion is needed to prove this fact. But salt and other waters, impregnated or combined with mineral substances, are minerals; so are rocks, clays and sand; anything dug from mines or quarries; in fine, all inorganic substances are classed under the general name of minerals: Bou. L. Dic.; Wor. Dic.; Dana's Geology; Grey's Botany. But if the reservation embraces all these things, it is as extensive as the grant, and therefore void.

> If, then, anything at all is to be retained for the vendor, we must, by some means, limit the meaning of the word "minerals."

*Dunham* at 44.

In *Gibson*, one of the early cases to address the issue, the question was whether a reservation in a deed of "all mineral or magnesia of any kind". . . "and all bricks and blocks of soapstone," included chrome. *Gibson*, at 41. The Court noted at the outset that agreements should be construed according to the meaning and understanding of the parties at the time they entered into them. While recognizing that minerals were usually of a "metallic nature, such as gold, silver, iron, copper, lead," the Court noted that one of the parties to the conveyance testified that at the time of the reservation, chrome was thought to be a metal of some kind, and perceived as containing some gold or silver. *Id*. The Court found that the mineral reservation included chrome. Years later, in distinguishing the holding in *Gibson*, the *Dunham* Court explained that while chrome would not ordinarily have been included in the common sense of the term mineral, "the parol evidence showed very clearly that the term "mineral" was introduced into the exception for the express purpose of embracing the chrome." *Dunham*, *supra* at 44.

*Dunham* involved a reservation "Excepting and reserving all the timber suitable for sawing; also, all minerals; also, the right of way to take off such timber and minerals." *Dunham*, *supra* at 43. Pursuant to that

- 8 -

reservation, the defendants erected a derrick and drilled for oil. The issue before the Court was whether petroleum was included in the exception for "all minerals." The **Dunham** Court conceded that "the word 'minerals' in its most comprehensive signification includes petroleum." **Id**. However, the question remained whether the parties to the agreement and deed used the word in the expansive or restricted sense. The Court concluded that when the contract was made, the parties did not intend to reserve the oil that would subsequently be found or they would have expressed that "in no doubtful terms." **Id**. at 44. It posited that the parties were likely unaware of the presence of oil at the time of conveyance or, if they knew of it, they were mistaken in hoping to reserve it under the general term mineral, which was not the common understanding of oil at the time. The Court held that petroleum was not included within the reservation. This holding has become a rule of property known as the **Dunham** Rule: the rebuttable presumption that "if, in connection with a conveyance of land, there is a reservation or an exception of 'minerals' without any specific mention of natural gas or oil, . . . the word 'minerals' was not intended by the parties to include natural gas or oil." **Butler**, **supra** at 886.

Much of the litigation surrounding the term mineral involves natural gas or oil. However, in **Hendler v. Lehigh Valley R.R. Co**., 58 A. 486 (Pa. 1904), the issue before the court was whether "or other mineral" language in a deed included sand. Hendler sold a fifty-foot right-of-way over his land

to permit construction of a railroad. When the railroad used a large quantity of sand taken from outside of the right-of-way, he sued in trespass to recover damages for its excavation and taking. At issue was whether the reservation "excepting and reserving, however . . . . all the coal and other minerals in, under, or upon said lot of land, and also reserving, as aforesaid, the unrestricted right and privilege of mining and removing all of said coal and minerals, or any part thereof" included sand. *Id*. at 487. In a subsequent deed, there was a further exception for "all the gravel necessary for any fill or ballast for the railroad." *Id*.

The Court noted that in the broadest sense, sand was a mineral. In the scientific sense, its composition determined whether it was a mineral. It concluded, however, that it was clear from the deed itself that the parties did not use the word mineral in either of those senses because, under either definition, gravel would have been included and there would have been no need for a special exception. The *Hendler* Court posited that perhaps mineral should be viewed in the commercial sense and include inorganic substances that are mined or quarried which have sufficient value when separated from the land, "to induce the expense and labor of severance for their own sakes." *Id*. The Court suggested that a vein of fine marble, granite, limestone or other building material, or pure white quartz sand used in the production of glass, might fall within the reservation, but common mixed sand used as grading material did not. Although the sand was not a

mineral within the meaning of the reservation, the **Hendler** Court upheld the award for the plaintiff on the alternative basis that the railroad took the sand from the plaintiff's property, carried it away, and used it on other property.

In **Silver v. Bush**, 62 A. 832 (Pa. 1906), the issue was whether a reservation of mineral rights included natural gas. Noting that the word mineral was a word of general language and "presumably is intended in the ordinary popular sense[,]" the Court recognized that in a particular case it may have a different meaning. Viewing the issue as one of contract, the Court concluded that different meaning "should clearly appear as intended by the parties." **Id**. at 833.

The Vosburgs direct our attention to a recent federal district court decision in **PAPCO Inc. v. United States Forest Serv.**, 814 F.Supp. 2d 477, 495 (W.D. Pa. 2011), addressing whether sandstone was included in a reservation of "all the . . . minerals of every kind and description whatsoever" in a 1931 deed. That court concluded, based on **Hendler**, that the intention was to reserve all commercially valuable minerals, and since the parties knew of the presence of sandstone and were likely aware of its value, it was within the scope of the reservation.

The Vosburgs cite **PAPCO** in support of the trial court's conclusion that commercially valuable rock is a mineral. However, the conclusion in PAPCO was that the parties **intended to** reserve all commercially valuable

minerals, limestone being one of those minerals. NBC contends that the trial court herein did not determine the intent of the parties but merely relied upon the scientific and geological definitions of a mineral in concluding that the rock was included within the reservation as a matter of law.

We agree with NBC that our courts, most recently *Butler*, have repeatedly rejected the notion that the scientific or dictionary definition of mineral is controlling when construing a coal and mineral reservation in a deed. *Butler* reaffirmed the long-held belief that, generally, we must look to the popular and common use of the word and the intent of the parties at the time of the reservation or grant in construing its meaning. Thus, the trial court erred in relying upon the scientific definition of mineral as the basis for its entry of partial summary judgment.

However, in citing *Butler* for the proposition that there is a presumption that the word "mineral" includes only ores and metals, not rock, NBC misses the mark. Language in *Butler* regarding the common perception of minerals as metals did not create a *Dunham*-like rule with regard to non-metallic rock.[7] With the exception of oil and gas, where the *Dunham* Rule applies in construing a mineral rights reservation, our primary

_____

[7] *Butler* reaffirmed the *Dunham* Rule, which provides that in a reservation or an exception of 'minerals' in a conveyance of land, where there is no specific mention of natural gas or oil, there is a rebuttable presumption that the term "minerals" was not intended by the parties to include natural gas or oil.

object must be to ascertain and effectuate what the parties themselves intended. *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa.Super. 2002). In doing so, we must look first to the language of the deed.

Rules for construing a reservation in a private deed were developed in *Brookbank v. Benedum-Trees Oil Company*, 131 A.2d 103 (Pa. 1957) and *Yuscavage v. Hamlin*, 137 A.2d 242 (Pa. 1958), and summarized in *Highland v Commonwealth*, 161 A.2d 390, 398 (Pa. 1957):

> Among such rules are those providing: (1) the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Id*.; *see also Ralston v. Ralston*, 55 A.3d 736 (Pa.Super. 2012). In addition, reservations in deeds are to be construed against the grantor. *Wilkes-Barre Township School Dist. v. Corgan*, 170 A.2d 97 (Pa. 1961).

With these principles in mind, we examine the Deed at issue. We note that there is no reference to rock, shale, or stone in the Deed. In the description of the property, stone corners denote boundaries, suggesting that boulders were visible on the surface. Thus, we can assume from the Deed itself that the parties knew about the presence of rock or stone and that any reservation would reflect their intentions in this regard. The

reservation, however, makes no specific mention of rock, stone, or quarrying.

Furthermore, the Grantors did not reserve all coal and minerals, but only coal and minerals beneath the surface. In addition, rather than reserve all methods of extracting the coal and minerals, they reserved only one method: "subterrane" mining, meaning underground mining. Moreover, the Deed contains the parties' agreement that no buildings or crops on the surface would be disturbed by the subterrane mining, which evidences their intent to preserve the surface and subjacent support for the benefit of the surface owner.

NBC contends that it is clear from the language of the Deed that only coal and minerals beneath the surface that could be removed and mined "subterrane" were included within the reservation. The Vosburgs maintained throughout that, to the contrary, their predecessors' reservation of minerals "included by implication the right to enter upon the Fritz Parcel and to remove coal and minerals **where ever** [sic] located subject to Defendants' right of support." Plaintiff's Answer to Defendants' Preliminary Objections [to amended Complaint], 2/26/03, at ¶11 (emphasis supplied). This included by implication the right to quarry on the property. In support of that position, they point to the fact that the parties to the Deed were involved in quarrying; Albert Vosburg owned a quarry on nearby property and Anthony Fritz worked at the quarry.

- 14 -

We find merit in NBC's construction of the language in the Deed. The plain language of the reservation did not reserve to the Grantors the right to all coal and mineral, but only to the coal and mineral **beneath the surface** that could be underground mined. We acknowledge that a reservation of mineral rights generally confers reasonable use of the surface to access those minerals, but reasonable access herein would be that necessary to underground mine, not to open pit quarry or strip mine.

We find no support in either the Deed or Pennsylvania law for the Vosburgs' contention that the reservation included the right to quarry on the property. *Rochez Bros., Inc. v Duricka*, 97 A.2d 825 (Pa. 1953), is instructive in this regard. Therein, the plaintiff became the owner of the rights to two coal reservations in deeds. One reservation included the coal underlying several acres, together with the right to mine and carry away all of the coal, including draining and ventilating, without providing for the support of the surface. The other reservation preserved "[t]he full, free, and exclusive right to enter in, upon, and under, the lands hereby conveyed for the purpose of exploring, drilling for, testing, and digging, mining, draining, storing, shipping, transporting and operating said reserved coal, . . . without liability for damages to the surface." *Id*. at 825. The issue before the Court was whether the reservations permitted the plaintiff company to remove coal through strip mining methods or whether it was restricted to shaft mining.

Our Supreme Court found that since strip mining stripped away the surface and horizontally withdrew the mineral deposits, "as a can opener lays bare the contents of a box of sardines," no land owner or purchaser would casually treat such rights. *Id*. at 826. The Court held that the right to enter "in, upon and under the lands" for mining purposes contained no right to remove the overlying surface. *Id*. Additionally, it noted that if the grant was intended to include strip mining, the immunity for damages to the surface would be meaningless and the right to ventilate would be superfluous. Our High Court construed the reservations as including only underground mining, not the right to strip the surface by strip mining. *See also Wilkes-Barre Twp. Sch. Dist.*, *supra* (relying upon *Rochez Bros.*, *supra* in interpreting coal reservation as including only right to vertically mine, not strip mine); *Stewart v. Chernicky*, *supra* (The right to mine and remove coal by deeds conveying land in language peculiarly applicable to underground mining does not include the right to remove such coal by strip mining methods.).[8]

_____

[8] Other jurisdictions have reached the same conclusion on similar facts. In *Beury v. Shelton*, 144 SE 629 (Va. 1928), the court reasoned that if the parties had intended to reserve limestone and the right to quarry, which would have made the surface grant ineffectual, they would have done so explicitly in the instrument. The court construed the proviso that the "mining, digging and removing" of the minerals and metals "shall be done with as little injury to the growing crops as conveniently and reasonably may be," as indicating that the parties did not contemplate limestone, which
*(Footnote Continued Next Page)*

Since rock at or near the surface cannot feasibly be removed via deep mining, and quarrying destroys the surface even more than strip mining, the "subterrane mining" limitation is powerful evidence that Vosburgs' predecessors did not retain any right to quarry the rock or to the rock itself. The obligation of the mineral rights owner to deep mine in a manner that would not disturb buildings and surface crops is further proof that the right to surface mine or quarry was not reserved.

Nor are we persuaded by the Vosburgs' assumption that because the parties were involved in quarrying, quarrying was the purpose for reservation. There is no indication that the Grantors intended to reserve the right to quarry on the property. Indeed, one would expect that if quarrying was contemplated, the Grantors would have retained ownership of the surface or specifically reserved the right to surface mine or quarry. They did

_(Footnote Continued)_ ─────────────

could be obtained only by the quarry or open-pit method and concomitant destruction of the surface, within the reservation.

In **Acker v. Guinn**, 464 S.W.2d 348 (Tex. 1971), in determining whether iron ore was a mineral within the meaning of the deed reservation, the Court held that such a reservation should not be construed to include a substance that must be removed by methods that will deplete the surface estate, unless a contrary intention is clearly expressed.

Since bauxite could only be removed via open pit-mining, and the surface owner purchased the property for a home and farm, the court held bauxite was not in the contemplation of the parties to the contract when this reservation of mineral rights was made. **Carson v. Missouri P. R. Co.**, 209 S.W.2d 97 (Ark. 1948).

neither.[9] One would have to question why Mr. Fritz would have paid any sum for property that the Vosburgs would destroy by quarrying.

Our reading of the Deed gives effect to "the apparent object or purpose of the parties and the conditions existing when it was executed." **Highland**, **supra** at 398. The Vosburgs' proposed construction of the reservation fails to give effect to the language limiting mineral rights to those beneath the surface. One would also have to ignore the proviso that access was limited to underground mining. Additionally, since quarrying destroys the surface, it is inconsistent with the contemplated use of the surface for buildings or crops.

Construing the reservation against the Grantors as we are compelled to do, we find that the Grantors' restriction of their reservation to coal and mineral **beneath the surface** and removable via **subsurface mining only** revealed no intention to include the rock herein, which was removable by quarrying only. This interpretation is ascertainable from the instrument itself and gives effect to all of its language.

---

[9] The Vosburgs aver that their predecessors entered the Fritz parcel by way of a township road and "conducted open pit quarrying of hardened shale located upon the Fritz Parcel before and after the conveyance of the surface of the Fritz Parcel." Plaintiffs' Answer to Defendants' Preliminary Objections, 1/5/03, at ¶9. Such a claim, even if substantiated, does not alter the plain language of the reservation.

By construing the reservation in the 1951 Deed as excepting only coal and mineral beneath the surface and extractible by deep mining, we conclude that the rock herein was not included within the mineral reservation.[10] Thus, it necessarily follows that there was no trespass to the reserved mineral rights of the Vosburgs, and the processing and crushing of the rock did not constitute a conversion. For these reasons, we reverse the grant of partial summary judgment in favor of the Vosburgs and remand for the entry of summary judgment in favor of NBC.

Order granting partial summary judgment reversed. Case remanded for entry of summary judgment in favor of NBC. Jurisdiction relinquished.

Judge Donohue joins this opinion.

Judge Allen files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/2/2015

---

[10] Since we determined that the parties did not intend to include rock within the mineral rights reservation, it was unnecessary to decide whether the rock herein constituted a mineral.

- 19 -