J-A14032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT G. WALTERS AND LOIS A. WALTERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| STANLEY E. MCILVEE, JR., AND CHRISTINE M. MCILVEE, DECEASED AND DALE R. HOWELL AND LISA L. HOWELL; KENNETH S. DOBIS; WILLIAM P. MCCAWLEY AND JOYCE G. MCCAWLEY; AND LARRY WALTERS AND CHRISTINE WALTERS | : | |
| | : | |
| APPEAL OF: DALE R. HOWELL AND LISA L. HOWELL | : | No. 1415 WDA 2019 |

Appeal from the Order Entered August 13, 2019
in the Court of Common Pleas of Potter County
Civil Division at No(s):  No. 6 of 2013

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 26, 2021**

Dale R. Howell ("Howell") and Lisa L. Howell (collectively, "the Howells") appeal from the Order denying their post-trial Motion seeking entry of judgment notwithstanding the verdict ("JNOV"), and a declaration that the

Howells were *bona fide* purchasers of the lands at issue.[1]  We affirm.

This appeal concerns oil and gas rights underlying a parcel of property in Harrison Township, Potter County ("the Property").  Robert G. Walters and Lois A. Walters (collectively, "the Walters") purchased the property at issue in April 1999.  In April 2003, the Walters entered into an agreement (the "Walters Sale Agreement") to sell the Property to Stanley E. McIlvee, Jr. ("McIlvee"), and Christine M. McIlvee.[2]  The Walters Sale Agreement provided that the deed would contain a provision excepting and reserving the oil, gas, and mineral rights to the Walters (the "Walters Reservation").  However, despite the Walters Sale Agreement and subsequent Addendum, the eventual deed (the "Walters-McIlvee Deed") did not contain the Walters Reservation, apparently due to a scrivener's error.

---

[1] The Howells purportedly appeal from the trial court's Order denying their post-trial Motion.  "An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions." **Fanning v. Davne**, 795 A.2d 388, 391 (Pa. Super. 2002).  While there is no indication in the record that judgment was subsequently entered, we deem done that which ought to have been done. **Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511, 514-15 (Pa. Super. 1995) (*en banc*).  Further, we may review an appeal in the absence of a properly entered judgment where, as here, "the order from which a party appeals was clearly intended to be a final pronouncement on the matters discussed …." **Id.**  As such, we will consider this appeal as being properly before this Court.

[2] Christine McIlvee died in March 2007.  However, because the chain of title for the parcels at issue occasionally refers to the McIlvees collectively, we will occasionally refer to the McIlvees as such.

In the years that followed, the McIlvees made four conveyances out of the property, retaining ownership of a portion of the parcel to themselves (the "McIlvee Property"). Relevantly to the instant appeal, in July 2003, the Howells executed an Agreement of Sale to purchase 60 acres from the McIlvees ("the Howell Property"), which was part of the original Property. The Agreement of Sale does not include any reference to the oil and gas rights underlying the Howell Property, but includes several undated, handwritten notations. The first notation states that the McIlvees will make various repairs and improvements to the Howell Property, and was initialed "DH" and "LH." Under that notation is a second, handwritten notation that states, "Seller will disclose any knowledge or leases to mineral rights existing on property, [i]f all mineral rights are excluded buyer has option to declare contract null and void or choose to purchase as is." This notation is also initialed by "DH" and "LH." Under the second notation is a final, third notation, which states, "No mineral rights included in purchase[;] Timber rights are included in the purchase." This notation is initialed by "SEM" and "CMM." The executed deed does not contain a reference or reservation as to the oil and gas rights underlying the Howell Property.

At some time in 2007, the McIlvees were contacted by a representative of Chesapeake Appalachia, LLC ("Chesapeake"), about executing an oil and gas lease as to the McIlvee Property. McIlvee indicated to Chesapeake that he did not own any of the oil, gas, and mineral rights underlying the McIlvee

Property. Several weeks after the initial meeting, Chesapeake informed McIlvee that it had researched the chain of title, and believed that McIlvee did, in fact, own the oil, gas, and mineral rights to the McIlvee Property. In accordance with this information, McIlvee proceeded to enter into an oil and gas lease with Chesapeake in September 2007.

In 2011, the Walters met with their attorney to inquire as to whether the Walters Reservation would vest in their children upon their deaths. At this time, they discovered the issue related to the scrivener's error in the Walters-McIlvee Deed, as well as the existence of the oil and gas lease that McIlvee had executed with Chesapeake.

On January 9, 2013, the Walters filed a Complaint against the McIlvees, alleging that that the McIlvees unjustly enriched themselves when they executed the oil and gas lease with Chesapeake and collected lease payments, because they did not own the oil and gas rights. The Walters also sought reformation of the Walters-McIlvee Deed to reflect the Walters Reservation, as noted in the Walters Sale Agreement. Following a procedural history not relevant to the instant appeal, the Walters filed an Amended Complaint naming the Howells, as well as the remaining subsequent purchasers, as additional defendants. The Howells filed an Answer with New Matter, to which

the Walters filed a Reply.[3] Following depositions of the involved parties, the Howells filed a Motion for summary judgment, and an amended Motion for summary judgment, which the trial court denied after argument.

After a bench trial, the trial court issued a Statement of Facts, Discussion, and Order concluding, *inter alia*, that the Howells were not *bona fide* purchasers of the Howell Property with respect to the oil, gas, and mineral rights. The trial court also ordered reformation of the Walters-McIlvee Deed to include the Walters Reservation. The Howells filed a timely Motion for post-trial relief seeking JNOV, and a declaration that they were *bona fide* purchasers of the Howell Property. The trial court denied the Motion. The Howells filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

The Howells raise the following issues for our review:

[1.] Did the trial court err in finding that the Howells were not *bona fide* purchasers of the [P]roperty?

[2.] Did the trial court err when it found that the term "mineral rights" in the [Agreement of Sale] was intended to encompass oil and gas rights as well as the mineral rights to the [P]roperty in violation of the **Dunham** Rule?[4]

---

[3] One subsequent purchaser, Kenneth S. Dobis, filed an Answer with New Matter, and a Motion and amended Motion for summary judgment. The remaining subsequent purchasers did not file a response to the Walters' Amended Complaint, nor are they involved in the instant appeal.
[4] **Dunham & Shortt v. Kirkpatrick**, 101 Pa. 36 (Pa. 1882).

Brief for Appellants at 7 (footnote added).[5]

In reviewing a trial court's decision denying a request for JNOV, "[our] standard of review … is the same as that for a trial court. *Ferry v. Fisher*, 709 A.2d 399, 402 (Pa. Super. 1998).

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the court could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 569 (Pa. Super. 2005) (citations omitted). "We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

---

[5] We note that the Argument section of Howells' brief is separated into three distinct arguments, but contains only two questions in the Statement of Questions Involved. However, we decline to find waiver as to the additional argument, as the questions posed in each argument section are "fairly suggested" by the Howells' Statement of Questions Involved. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

The Howells argue that the trial court abused its discretion when it determined that the Howells were not *bona fide* purchasers of the Howell Property. Brief for Appellant at 16. In support of this contention, the Howells claim that they did not have actual or constructive notice of the existence of the Walters Reservation. *Id.* at 16-18. Specifically, the Howells argue that the trial court improperly determined that the notations made on the Agreement of Sale gave the Howells notice that the "mineral rights" were not included with the Property. *Id.* at 18. However, the Howells assert that such a reservation, to the extent that it exists, would not include oil and gas rights under Pennsylvania law. *Id.* at 18-21. The Howells also argue that the Walters failed to meet their burden of proof regarding their actual or constructive notice of the Walters Reservation, because the only evidence that existed of the McIlvees informing the Howells of the Walters Reservation was disputed. *Id.* at 22-23.

> In order for a party to qualify as a *bona fide* purchaser,
>
> the subsequent buyer must be without notice of the prior equitable interests of others. If the subsequent purchaser has notice of the first agreement of sale or deed, he has no protection as a *bona fide* purchaser and his title is subject to the interest vested in the first purchaser. Either actual or constructive notice is sufficient to prevent the subsequent purchaser from acquiring the status of a *bona fide* purchaser. Because constructive notice is not limited to instruments of record, a subsequent purchaser may be bound by constructive notice of a prior unrecorded agreement. This is true because the subsequent purchaser could have learned of facts that may affect his title by inquiry of persons in possession or others who the purchaser reasonably believes know such facts.

*Long John Silver's, Inc. v. Fiore*, 386 A.2d 569, 572-73 (Pa. Super. 1978) (citations omitted).

Mindful of our standard of review, and viewing the evidence in the light most favorable to the Walters as verdict winners, we discern no abuse of discretion or error of law by the trial court. In his deposition, McIlvee testified that, although he could not recall the exact date of his correspondence with the Howells, he informed the Howells that they would not be receiving the oil and gas rights to the Howell Property. McIlvee Deposition, 4/16/18, at 14. McIlvee expressed his belief that the "mineral rights" referenced in the Agreement of Sale included gas rights, and that the Howells were of the same belief. *Id.* McIlvee testified that the parties discussed the oil and gas rights, and that the parties would not have included the notations about mineral rights in the Agreement of Sale if they had not discussed those rights in negotiating the Agreement of Sale. *Id.* at 14-15.

Howell, in his deposition testimony, disputed that the parties had discussed oil, gas, or mineral rights with McIlvee prior to signing the Agreement of Sale. Howell Deposition, 6/1/17, at 6. Howell additionally stated that McIlvee never informed him of the Walters Reservation, and that his understanding was that the mineral rights were included with the Howell Property. *Id.* at 7-8.

After considering the parties' testimony, the trial court found McIlvee's testimony to be credible, and the testimony of Howell to be not credible. Trial

Court Opinion, 3/10/19, at 13. We may not reweigh this evidence, and are bound by the trial court's credibility determinations. **Wilson**, **supra**.

Further, the trial court made the reasonable inference, based on the evidence before it, that the parties likely discussed oil and gas rights because McIlvee was aware of the existence of the Walters Reservation. Trial Court Opinion, 3/10/19, at 12-13. We are required, under our standard of review, to give the Walters, as the verdict winners, the benefit of those reasonable inferences. **Wilson**, **supra**.

Thus, the evidence of record supports the trial court's finding that "the handwritten language contained in the [] Agreement [of] Sale, taken together with [] McIlvee's credible testimony in this regard, evidences that the Howell[]s had notice of [the Walters Reservation] prior to their transaction with [the McIlvees]." Trial Court Opinion, 3/10/19, at 13. Accordingly, we must affirm the trial court's verdict that the Howells were not bona fide purchasers of the Howell Property. **Long John Silver's**, **supra**.

In their second claim, the Howells argue that the trial court erred in determining that "mineral rights," as included on the Agreement of Sale, included the oil and gas rights to the Howell Property. Brief for Appellant at 24. The Howells contend that the trial court's conclusion was contrary to the presumption, as set forth in the "**Dunham** Rule," that the term "mineral rights" does not include oil and gas rights. **Id.** at 24-25. According to the Howells, McIlvee's deposition testimony that he had advised the Howells of

the Walters Reservation was not enough to overcome the clear and convincing

standard required by the **Dunham** Rule. **Id.** at 25.

As our Supreme Court has explained:

The **Dunham** Rule is clear, dating back to **Gibson** [**v. Tyson**, 5 Watts 34 (Pa. 1836)], that the common, layperson understanding of what is and is not a mineral is the only acceptable construction of a private deed. Notwithstanding different interpretations proffered by other jurisdictions, the rule in Pennsylvania is that natural gas and oil simply are not minerals because they are not of a metallic nature, as the common person would understand minerals. **Gibson**, 5 Watts at 41-42; **see also Dunham**, 101 Pa. at 44. The **Highland** [**v. Commonwealth**, 161 A.2d 390 (Pa. 1960),] decision made clear that the party advocating for the inclusion of natural gas within the deed reservation bears the burden of pleading and proving by clear and convincing evidence that the intent of the parties who executed the reservation was to include natural gas. [**Id.**] at 398-99. Critically, however, such intention may only be shown through parol evidence that indicates the intent of the parties at the time the deed was executed[.]

**Butler v. Charles Powers Estate ex rel. Warren**, 65 A.3d 885, 898 (Pa.

2013) (emphasis added).

"Clear and convincing evidence" requires "evidence that is so clear,

direct, weighty, and convincing as to enable the [fact finder] to come to a

clear conviction, without hesitancy, of the truth of the precise facts in issue."

**Rohm and Haas Co. v. Continental Cas. Co.**, 781 A.2d 1172, 1179 (Pa.

2001) (citation and internal quotation marks omitted).

Again mindful of our standard of review, and reviewing in the light most

favorable to the Walters as verdict winners, we discern no abuse of discretion

or error of law by the trial court. The trial court, in relying on the testimony

and evidence set forth above, concluded that the term "minerals," as set forth

in the Agreement of Sale, was intended to include oil and gas. Trial Court Opinion, 3/10/19, at 13. For the same reasons, we may not disturb those findings of fact. **Wilson**, **supra**. Further, the trial court made the reasonable, evidence-based inference that the extensive history of oil and gas development in the region, compared to the sparse history and value of mineral extraction, made it unlikely that the parties would discuss "minerals" and not oil and gas.[6] Trial Court Opinion, 3/10/19, at 12-13. Thus, the trial court's determination that the Walters had rebutted the presumption that "minerals" did not include oil and gas, is supported by clear and convincing evidence. **See Butler**, 65 A.3d at 897-98 (concluding that natural gas was not included in a reservation of "minerals and petroleum oils" when insufficient evidence existed to indicate that the parties intended to include natural gas); **see also Vosburg v. NBC Seventh Realty Corp.**, 122 A.3d 393, 401-02 (Pa. Super. 2015) (holding that a reservation of "all coal and other mineral beneath the surface," with the right to remove such minerals by "subterranean mining" did not also reserve the right to excavate rock from just beneath the

---

[6] We also note that the Title Report for the Howell Property, prepared by the Howells as part of the transaction and delivered to the Howells prior to the execution of the deed, does not disclose any history of mineral leases affecting the parcel. However, the report specifically notes three different oil and gas leases executed on the parcel between 1952 and 2003, including an oil and gas lease executed by the Walters in February 2003, less than one year prior to the Howells' purchase of the property from McIlvee. **See** Title Report, 10/16/03, at 3.

surface, when no evidence existed to indicate that such rocks were contemplated in the reservation).

Because the Howells failed to demonstrate that the evidence entitles them to a judgment as a matter of law, we must affirm the trial court's Order. *Wilson*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2021